1

The Honorable Robert S. Lasnik

2

3

4

5

6

7 UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
8 AT SEATTLE

9

10 IN RE PETITION OF INDEX
NEWSPAPERS LLC D/B/A THE
11 STRANGER TO UNSEAL ELECTRONIC     CASE NO.  17-mc-00145RSL
SURVEILLANCE DOCKETS,
12 APPLICATION, AND ORDERS

13

14

15

16

17 **RESPONSE TO THE STRANGER'S PETITION
TO UNSEAL DOCKETS, APPLICATIONS, AND ORDERS**

18

19

20

21

22

23

24

25

26

27

28

RESPONSE TO PETITION TO UNDER
DOCKETS, APPLICATIONS AND ORDERS
17-mc-00145RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................3

I.     The Statutory Authority for Issuing Orders Authorizing the Use of Certain
       Investigative Processes and for Sealing Those Orders ........................................3

II.    The Relief Sought ..................................................................................................4

III.   The Legal Authority for Issuing and Sealing the Investigatory Processes at Issue ........5

       A.     The Wiretap Act .........................................................................................5

       B.     The Pen Register Act ..................................................................................7

       C.     The Stored Communications Act ................................................................8

       D.     The All Writs Act .....................................................................................11

IV.    Sealing Procedures in this Court .........................................................................11

       A.     GJ Matters ................................................................................................12

       B.     Stored Communications Act Warrants .....................................................16

V.     Related Litigation ...............................................................................................17

       A.     *Matter of Leopold* ...................................................................................17

       B.     *Petition of Granick* .................................................................................21

RESPONSE TO THE PETITION .......................................................................................22

I.     The Qualified First Amendment and Common Law Right to Access
       Court Records .....................................................................................................22

       A.     The First Amendment Right of Access .....................................................23

       B.     The Common Law Right of Access ..........................................................23

II.    The Stranger Demands Structural Changes to Which It Has No Right ......................24

       A.     The Stranger Is Seeking Structural Reforms That Are Not Available
              Under a Court's Supervisory Powers Over Its Records .......................................24

       B.     Two Similar District Court Proceedings Support Dismissal Here ....................28

III.   The Stranger Lacks Standing for Its Claim for the Unsealing Of Dockets,
       Orders, and Underlying Materials in all Five Categories Of Cases .............................30

IV.    The Stranger's Claims to Materials Under the Wiretap Act Lack Merit ......................37

       A.     There Is No First Amendment Right to Access Wiretap Act Materials ..........39

       B.     There Is No Common Law Right of Access to Wiretap Act Materials ..........41

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - i

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

C.      There Is No Right of Access to Dockets for Wiretap Materials ...................... 43

V.   The Stranger's Claims for Access to Materials Under the Pen Register Act,
     the Stored Communications Act, and the All Writs Act Lack Merit ............................ 43

A.      The Stranger Has No First Amendment Right to the Materials
        In Question ......................................................................................................... 43

        1.      There Is No History of Access to These Materials ................................ 44

                a.      PR/TT Orders .............................................................................. 45

                b.      2703(d) Orders and SCA Warrants ............................................. 45

                c.      All Writs Act Orders ................................................................... 46

        2.      Logic Does Not Support Public Access to These Materials ................ 46

        3.      The Interest in Secrecy Outweighs Any First Amendment Right ........ 51

B.      There Is No Common Law Right of Access to these Materials ......................... 51

C.      There Is No Separate Right to Access Dockets Under the First Amendment
        or the Common Law ........................................................................................... 53

D.      The Claim for a Presumption of Unsealing After 180 Days Is
        Without Merit ...................................................................................................... 57

CONCLUSION ......................................................................................................................... 57

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - ii

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# INTRODUCTION

In December 2017, this Court invited the United States and the United States District Court for the Western District of Washington to respond to The Stranger's Petition to Unseal Electronic Surveillance Dockets, Applications, and Orders.  Citing the First Amendment and the common law right to access court records, The Stranger demands comprehensive changes in the way this Court dockets and maintains orders governing the United States' use of certain investigatory processes.  It also seeks the disclosure of more than seven years of materials associated with those processes unless the United States can show that a particular matter should remain sealed.

Transparency is a fundamental touchstone for the United States Department of Justice.  The United States Attorney's Manual (USAM)—the key policy document for United States Attorney's Offices—sets policy regarding the protection and release of information obtained by United States Attorney Offices during the course of their work.  It balances four primary interests including transparency:  (1) an individual's right to a fair trial or adjudicative proceeding; (2) an individual's interest in privacy; (3) the government's ability to administer justice and promote public safety; and (4) the right of the public to have access to information about the Department of Justice.  USAM 1-7.001.

Much of the work of the United States Attorney's Office, however, involves non-public, sensitive matters.  Wholesale release of the investigative processes that The Stranger seeks would implicate the safety and privacy of confidential human sources, cooperating witnesses, law-enforcement personnel, and innocent parties, would intrude on the privacy of individuals who were investigated for suspected criminal activity but never prosecuted, and would increase the likelihood that investigatory targets will be alerted to lawful investigative activity of, and techniques used by, the United States.  The requested relief would also implicate grand-jury secrecy under certain circumstances.  Finally, it would impose a significant and unreasonable burden on the United States Attorney's office and, based on consultations with the Clerk, on the Clerk of the Court as well.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Two other district courts have recently considered similar, but narrower, petitions.[1] Although one of the cases is ongoing, both courts have denied some of the relief sought on the ground that it was unwarranted, overbroad, or unduly burdensome.  Those courts were correct, and this Court should deny relief in full on similar grounds.

The Stranger's petition asks this Court to exercise its supervisory power over its records in an unprecedented manner.  The Stranger does not seek records in a particular case. Instead, it seeks fundamental, structural changes in the way that this Court handles five different types of investigatory processes.  This Court should conclude that its supervisory power over records does not extend to the consideration and resolution of unsealing claims at a wholesale level and dismiss the petition for that reason.  But if this Court disagrees, it should dismiss or deny the petition for other reasons.  The Stranger lacks standing to seek the disclosure of dockets, orders, applications, and underlying materials because the injury it claims from the lack of these materials is not sufficiently concrete or particularized.  To the extent that this Court concludes that The Stranger has standing, the law plainly dictates that it has no right to the relief it seeks.

Although The Stranger's petition lacks merit, there is no question that the District Court for the Western District of Washington has the administrative authority to change its docketing practices whenever it concludes that doing so is desirable.  The experience in other districts suggests that limited docketing information—that is, the case number and type of process sought—can be made public for some of the processes at issue here (not including wiretap materials) without undermining the relevant statutory scheme or criminal investigations.  But any changes to docketing practices that this Court believes would be appropriate should be adopted not in the context of this type of litigation, but instead through a process that fully considers the impact on the Court and the United States Attorney's Office, including the technical and practical adaptations that would be required, and the impact of any

---

[1] Those petitions covered longer time periods but sought materials concerning fewer types of processes.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

changes on public safety, criminal investigations, and the privacy interests of uncharged targets of those investigations.[2]

## BACKGROUND

## I. The Statutory Authority for Issuing Orders Authorizing the Use of Certain Investigative Processes and for Sealing Those Orders

When the United States conducts criminal investigations, it applies for court orders authorizing the use of various different investigative processes.  When authorized by statute, or after the United States has established good cause, those applications and orders are sealed to protect the secrecy of ongoing investigations and investigative techniques, as well as the privacy of individuals who are under investigation but might never be charged with any crime. The petition in this case concerns orders authorizing five distinct types of investigatory processes that are commonly subject to sealing orders:

(1)    wiretap orders or orders requiring a third party to provide technical assistance under the Wiretap Act, 18 U.S.C. §§ 2511(2)(a)(ii), 2518;

(2)    orders authorizing the installation and use of a pen register or a trap and trace device under the Pen Register Act, 18 U.S.C. § 3123, or orders requiring a third party to assist with a pen register or a trap and trace device under 18 U.S.C. § 3124;

(3)    orders under the Stored Communications Act 18 U.S.C. § 2703(d) requiring disclosure of communications, records, or other information pertaining to a subscriber or customer, as described in 18 U.S.C. § 2703(b);

(4)    warrants requiring a provider of electronic communication services or remote computing services to disclose the contents of a wire or electronic communication as described in 18 U.S.C. § 2703(a) or (b), or a record or other information pertaining to a subscriber or customer as described in 18 U.S.C. § 2703(c); and

---

[2] The United States Attorney's Office has consulted with the Clerk of the Court to prepare this response in order to understand the Court's processes and the burden that granting the relief sought would place on this Court.  This response reflects that consultation.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(5)     orders under the All Writs Act, 28 U.S.C § 1651(a), requiring third parties to provide technical assistance to law- enforcement officials in aid of some other process.

Petition at 29-31.[3]

The petition classifies these orders in four categories, collapsing categories (3) and (4) above.  Because warrants under Section 2703 of the Stored Communications Act that require a provider of electronic communication services or remote computing services to disclose the contents of a wire or electronic communication are subject to different docketing and sealing procedures in this district than the other processes at issue, they are analyzed separately.

## II.   The Relief Sought

The Stranger makes both backward- and forward-looking demands for relief regarding the five types of processes at issue.  The Stranger contends that it is entitled to this relief under both the First Amendment and the right of access to court records recognized under the common law.

For applications and orders obtained between January 1, 2011, and the present, it seeks:

(1)     the unsealing within 180 days, unless the government shows a need for continued sealing in a particular case, of the orders granting or denying applications as well as the application and supporting documents for each type of order; and

(2)     the unsealing within 180 days, unless the government shows a need for continued sealing in a particular case, of the docket sheets.

Pet. 29-31.  Prospectively, the petition seeks:

(1)     a prospective change in the court's docketing system, so that whenever the United States applies for an order in one or more of the categories at issue, the application and order would be designated as a MJ or MC case in the court's electronic filing system;

---

[3] The petition refers to these five types of orders as "electronic surveillance orders."  Although some orders in each of these categories concern electronic communications, other do not.  For example, a traditional pen register order for a land-line telephone would appear to fall within the category of documents that petitioners are seeking but would not appear to involve electronic communications.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(2)    an order compelling the government to file with the initial application for an order in any of the five categories a public notice identifying the agency filing the application, the authority under which the application is made, the relief sought, the type of crime under investigation, and the identity of the recipient of the order or warrant;

(3)    an injunction compelling the clerk to unseal the electronic dockets for orders granting or denying applications in any of the five categories after 180 days unless the government moves for continued sealing and the court grants the request; and

(4)    an injunction compelling the clerk to unseal any order granting or denying applications in any of the five categories, and the application and supporting documents, 180 days after it is entered unless the government moves for continued sealing and the court grants the request.

Pet. 29-31.

## III.   Legal Authority for Issuing and Sealing the Investigatory Processes at Issue

The materials at issue include materials that are sealed because sealing is required by law and materials that are sealed by the court based on a determination of good cause.

### A.   The Wiretap Act

The Wiretap Act governs real-time interception of wire, oral, and electronic communications. 18 U.S.C. §§ 2510–2511, 2520–2521. The Act broadly prohibits intercepting private wire, oral, or electronic communications by anyone in the United States, unless a statutory exception applies. 18 U.S.C. §§ 2510(4), 2511(1). One such exception permits law enforcement to intercept wire, oral, and electronic communications pursuant to a court order under 18 U.S.C. § 2518, which requires, among other things, a showing of probable cause to believe that the interception will reveal evidence of a predicate felony offense. 18 U.S.C. § 2518(3)(a)-(b). Wiretap applications and orders typically contain private information about individuals, including names, social security numbers, birth dates, and telephone numbers. Because wiretap applications and orders are required to name individuals whose communications are likely to be intercepted and who may be involved in the offenses being investigated, applications often include information about people who ultimately are not

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

charged with a crime, such as the partners, business associates, relatives, or friends of the target of the investigation.

Section 2518(8)(b) provides that wiretap orders "shall be sealed" and that the

custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.

*Id.* These provisions, taken together, set out a presumption that individual wiretap orders will remain sealed unless a party is able to establish "good cause" for unsealing in a particular case. *In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 407 (2d Cir. 2009); *Nat'l Broad. Co.* v. *United States Department of Justice*, 735 F.2d 51, 55 (2d Cir. 1984). Determining whether there is good cause for unsealing requires weighing the competing interests involved, including the privacy interests of people whose communications were intercepted.

The Wiretap Act requires post-surveillance notice to targets "within a reasonable time but not later than ninety days" after the surveillance ends, although that notice may be postponed on a showing of good cause. 18 U.S.C. § 2518(8)(d). Only the targets of the investigation are entitled to notice; other parties to the intercepted communication have no such right to notice. 18 U.S.C. § 2518(8)(d).[4] Wiretaps and information obtained in them are typically disclosed in discovery when they result in criminal charges.

---

[4] Although the Wiretap Act does not require notice to non-targets, a judge overseeing a particular wiretap order may require such notice "in his discretion" and "in the interest of justice." 18 U.S.C. § 2518(8)(d). The United States Attorney's Office for the Western District of Washington provides notice to every identifiable private individual who is intercepted and for whom it can find an address. Gorman Decl. ¶ 18.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.      The Pen Register Act**

The Pen Register Act governs the real-time collection of non-content dialing, routing, addressing, and signaling information associated with electronic and wire communications using pen registers and trap and trace devices.[5] The Act broadly prohibits the collection of such information, unless a statutory exception applies or a court order is obtained.  18 U.S.C. § 3121(a).  To obtain a court order for a pen register or a trap and trace device (PR/TT order), the United States submits an application certifying that the records sought are relevant to an ongoing criminal investigation.  18 U.S.C. § 3123(a).  PR/TT applications typically describe information giving rise to reasonable cause to believe the communications facility is being used in criminal activity.  The Supreme Court has held that the government is not required to show probable cause to obtain information from a pen register or a trap and trace device because a person has no reasonable expectation of privacy in the telephone numbers that he or she dials.  *Smith* v. *Maryland*, 442 U.S. 735 (1979).

Although sometimes barebones, PR/TT applications may include information about confidential informants, cooperating witnesses, on-going wiretaps, and grand jury matters, and they may disclose law-enforcement techniques.  A court that approves an application enters an order that includes identifying information about the subject of the investigation, the offense under investigation, and the phone number or other identifier to which the order applies.  18 U.S.C. § 3123(b).

The Act also governs third-party assistance to the United States in carrying out an order under the Act.  It provides that, on request of an attorney for the Government or an officer of a law-enforcement agency authorized to install a PR/TT device, third parties will provide

---

[5] A pen register is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). Thus, a pen register is able to record outgoing numbers dialed by a target phone. A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4). Thus, a trap and trace device captures the numbers of the incoming calls made to a target phone.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

all "information, facilities, and technical assistance necessary to accomplish the installation of the pen register unobtrusively and with a minimum of interference with the services."  18 U.S.C. § 3124.

Like the Wiretap Act, the Pen Register Act provides for sealing and nondisclosure of PR/TT orders.  18 U.S.C. § 3123(d)(1).  Indeed, orders issued under the Act are likewise presumptively sealed "until otherwise ordered by the court," and the Act directs that the person or entity upon whom the order is served may "not disclose the existence of the [PR/TT] device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court"— provisions that reflect a Congressional determination that secrecy is required for the effective use of PR/TTs in investigations.  18 U.S.C. § 3123(d)(1-2).

In this district, PR/TT applications and orders are typically disclosed to defendants in discovery after charges are filed.  Attachment A, Gorman Decl. ¶ 18.  The United States Attorney's Office sometimes seeks a protective order for disclosed PR/TT materials, but does not do so as a matter of course.  Gorman Decl. ¶ 18.  PR/TT applications and orders for investigations that do not result in criminal charges typically remain sealed and are not disclosed to anyone other than the prosecutors and investigators who were involved in obtaining and conducting the PR/TT order.  Gorman Decl. ¶ 19.

## C.     The Stored Communications Act

The Stored Communications Act governs how the United States obtains records and information pertaining to subscribers and customers of electronic communications services and remote computing services, including basic, non-content user information such as a subscriber's name and address, as well as the contents of electronic communications. 18 U.S.C. §§ 2701-2712.  The Act protects "the privacy of users of electronic communications by criminalizing the unauthorized access of the contents and transactional records of stored wire and electronic communications, while providing an avenue for law enforcement entities to compel a provider of electronic communications services to disclose the contents of records

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of electronic communications." *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(d)* v. *Applebaum*, 707 F.3d 283, 286-87 (4th Cir. 2013).

Section 2703, the core provision of the Stored Communications Act, authorizes the government to compel disclosure of records pertaining to a customer or subscriber from an electronic communications service or remote computing service.  There are three categories of information, each with differing access requirements: (1) contents of wire or electronic communications in electronic storage or in a remote computing service; (2) non-content subscriber records or information from an electronic communication service or remote computing service; and (3) basic subscriber information.  To obtain information in the first category, the government generally uses a warrant authorized under Section 2703(a) or (b) of the Stored Communications Act, following the procedures of Federal Rule of Criminal Procedure Rule 41 (an SCA warrant).[6]  18 U.S.C. § 2703(a), (b).

For non-content records and information beyond basic subscriber information, that is, information in the second category, the government can submit an ex parte application for an order pursuant to § 2703(d).  Such an order will require an electronic communication service or remote computing service provider to disclose certain records and other information pertaining to the subscriber's account(s) associated with an email address or other identifier, including the telephone number, account number, user name, IP address, or domain name.  A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).  Under 18 U.S.C. § 2703(c)(1)-(2), the government "is not required to provide notice to a subscriber or customer" regarding the proposed order.  18 U.S.C. §

---

[6] While section 2703(b)(1)(B) allows the Government to obtain content stored for more than 180 days without a warrant, the authority to obtain content without a warrant is rarely used.  Many service providers refuse to produce content without a search warrant in reliance on *United States* v. *Warshak*, 631 F.3d 266 (6th Cir. 2010), which held that obtaining the contents of emails from a commercial internet service provider using a section 2703(d) court order violates the Fourth Amendment.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2703(c)(3).  The final category of information, that is, basic subscriber information, may be obtained via grand jury, administrative, or trial subpoena.  18 U.S.C. § 2703(c)(1)(2).

Although the Stored Communications Act does not expressly contemplate that applications for SCA warrants and 2703(d) orders must be sealed, the government often seeks SCA warrants and 2703(d) orders early in an investigation, when the need for secrecy to protect an investigation is high.  The government routinely obtains a sealing order to protect the integrity of ongoing investigations under the court's common law authority.

The statute anticipates the need to maintain the secrecy of process issued under Section 2703, authorizing courts to issue "an order commanding a provider of electronic communications service or remote computing service to whom . . . [the] court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of . . . the warrant, subpoena, or [the] court order."  18 U.S.C. § 2705(b).  Such a nondisclosure, or preclusion, order must be issued if the court finds "reason to believe that notification . . . will result in—(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial."  *Id*.  A preclusion order remains in effect "for such period as the Court deems appropriate."  18 U.S.C. § 2705(b).  On October 19, 2017, the Department of Justice adopted a policy that sets a default one-year limit for preclusion orders.  Rod J. Rosenstein, Deputy Attorney Gen., *Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)* (October 19, 2017), available at https://www.justice.gov/criminal-ccips/page/file/1005791/download.  Where there are reasons to preclude disclosure at the end of a year, an application can be made to extend the preclusion order.  *Id*.  In exceptional circumstances, such as a national security investigation, a longer preclusion may be requested from the court at the outset.  *Id*.

The Stored Communication Act also permits the United States to obtain a non-disclosure or preclusion order to prohibit the recipient of a subpoena for basic subscriber information issued under 18 U.S.C. § 2703(c)(1)(2) from notifying its customer of receipt of

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

process.  *See* 18 U.S.C. § 2705(b).  Although grand jury subpoenas are not ordinarily filed with the court, requests for non-disclosure orders accompanying these subpoenas routinely are. For that reason, any unsealing of non-disclosure orders risks inadvertently disclosing grand jury process in violation of Federal Rule of Criminal Procedure 6(e).

**D.    The All Writs Act**

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).

The Ninth Circuit has held that the All Writs Act "permits the district court, in aid of a valid warrant, to order a third party to provide nonburdensome technical assistance to law enforcement officers."  *Plum Creek Lumber* v. *Hutton*, 608 F.2d 1283 (9th Cir. 1979); *see also United States* v. *New York Tel. Co.*, 434 U.S. 159 (1977) (same).  No statute governs whether such an order would be sealed, and sealing is thus governed by the rules generally applicable to sealing a matter in district court.  *CBS, Inc.* v. *U.S. Dist. Court for Cent. Dist. of Cal.*, 765 F.2d 823, 826 (9th Cir. 1985)  (presumption of openness may be overcome by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest).  The United States Attorney's Office seeks All Writs Act orders only in limited circumstances and only when it can show that the order sought is in aid of a valid order.  Gorman Decl. ¶ 9.

**IV.    The Sealing Procedures in this Court**

The United States Attorney's Office has consulted with the Clerk of the Court to better understand docketing practices in this district.  Based on information from that consultation, under the current practice of this Court, when a new matter is submitted, the matter is assigned a case number in the Court's filing system in one of six categories: civil (CV), criminal (CR), magistrate judge (MJ), miscellaneous (MC), petty offense (PO), or grand jury (GJ). Attachment B, McCool Decl. ¶ 5.  The Clerk's Office designates new matters in one of these categories for administrative reasons reflecting the design of the CM/ECF system.  The

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

designations affect case processing, but they do not have any legal significance.[7]  McCool Decl. ¶ 5.

### A.      GJ Matters

The dockets for all GJ matters are sealed.  They are not available to members of the United States Attorney's Office or to a member of the public who uses the public terminals in the Clerk's Office or through the Court's online electronic filing system.  McCool Decl. ¶ 8.

The "GJ" stands for grand jury.  McCool Decl. ¶ 9.  Some of the matters designated GJ are grand-jury matters, such as compulsion orders arising out of contempt proceedings and nondisclosure orders relating to a grand jury subpoena.  McCool Decl. ¶ 9.  But some matters filed in this category are not strictly grand-jury matters.  Instead, the Clerk's Office uses the "GJ" category for a number of sealed investigatory processes, including all of the types of process at issue here except for SCA warrants.  McCool Decl. ¶ 9.  It also uses the GJ designation for a number of other ex parte proceedings including applications and orders pertaining to Mutual Legal Assistance Treaty requests and extradition matters; and ex parte tax applications, orders, and associated documents.[8]  McCool Decl. ¶ 9.  Since 2011, the Clerk's Office has opened approximately 2,419 GJ matters.  McCool Decl. ¶ 10.  For the reasons just explained, only an undetermined subset of these matters relate to one or more of the processes at issue here.

---

[7] All of the district courts in the federal system use the CM/ECF system, but there are wide variations between districts in sealing practices and in how these processes and other matters are docketed. *In the Matter of the Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, __ F. Supp. 3d __, 2018 WL 1129660 at *29-31  (D.D.C. Feb. 26, 2018) (discussing docketing practices in the Districts for the District of Columbia and the Eastern District of Virginia).

[8] The Internal Revenue Service is generally prohibited from disclosing tax returns or return information except as authorized by statute, but may disclose tax return information to officers and employees of a federal agency upon a court order where necessary to further a criminal investigation.  26 U.S.C. § 6103.  Section 6103 imposes strict measures to protect the confidentiality of tax information so disclosed, and ex parte applications and orders for tax information are therefor filed under seal.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The Clerk uses the GJ designation for all of these types of filings because they are subject to sealing orders and the Clerk has determined that using the GJ designation is the best administrative approach to ensuring compliance with sealing orders.[9]  McCool Decl. ¶ 11. The processes at issue here sometimes touch on matters before the grand jury even though they are not themselves grand jury matters.  For example, a Section 2705(b) preclusion order might be attached to a grand jury subpoena, or information contained in applications might reveal matters before a grand jury.[10]

The Clerk's concern with accidental unsealing is well-placed.  When a sealed matter is accidently unsealed and picked up by one of the companies that gather case information from the Public Access to Court Electronic Records (PACER) system, there is no way for the Clerk's Office to remove it from those external systems.[11]  McCool Decl. ¶ 7.  This is true more broadly to the extent that anyone in the public accesses the court's systems, including members of the media.

The Clerk's Office does not have a uniform practice for capturing information on the docket for the processes at issue here.  McCool Decl. ¶ 15.  The staff of the Clerk's Office fills in predefined fields in the CM/ECF system regarding the application and order, but these fields do not correspond to information that is typically part of the caption for one of these applications.  McCool Decl. ¶ 15.  For example, the CM/ECF system calls for the entry of a plaintiff and a defendant for all new matters; it does not have fields for case information specifically designed for an application for investigatory process.  McCool Decl. ¶ 15.

Many of the Court's dockets for GJ matters list the type of process sought in the "defendant party last name" field, but there is wide variation in how these processes are identified.  McCool Decl. ¶ 15.  For example, pen register orders can be identified as "Pen

---

[9] The electronic filing system used by the Clerk is managed by the Administrative Office of the U.S. Courts.  McCool Decl. ¶ 3.

[10] When a matter before the grand jury is implicated, unsealing would violate Federal Rule of Criminal Procedure 6.

[11] PACER is an electronic public access service that allows users to obtain case and docket information online from federal appellate, district, and bankruptcy courts, and the PACER Case Locator.

Register," but also as "[phone number]," "cell phone," "[provider] cell phone," or "target telephone," or other notations that reflect what is at issue in the order. McCool Decl. ¶ 15. Other case information also is not entered into the docket consistently. McCool Decl. ¶ 16. For example, the dockets for some GJ matters indicate information about the target of the order, such as a telephone number or email address, but others do not. McCool Decl. ¶ 16. Also, some indicate the name of the Assistant United States Attorney who made the application, and some do not. McCool Decl. ¶ 16. Docket sheets typically do not indicate the type of crime under investigation or the agency conducting the investigation. McCool Decl. ¶ 16.

It is also important to note that it is commonplace for the United States Attorney's Office to file a single application seeking both a PR/TT order and a 2703(d) order. Gorman Decl. ¶ 9. In that event, or in the event of an application seeking other combinations of process, the matter will be docketed with a single GJ number, and yet the docket might not indicate all of the types of orders sought or issued.

For all these reasons, it is not possible for the Clerk of the Court to query the court's electronic filing system to identify all of the GJ and MJ matters sought by the petition. McCool Decl. ¶ 17. Even if it could, the dockets as currently maintained do not uniformly include all of the information about each matter that the petition seeks. McCool Decl. ¶¶ 15-16.

The United States Attorney's Office has its own internal case-tracking system. Gorman Decl. ¶ 12. It can open a case in that system well before any investigatory process is sought from a court. Gorman Decl. ¶ 12. The Clerk's office, by contrast, assigns a docket or case number to an investigatory order only after the application is made and the Court issues an order. Gorman Decl. ¶ 4. Subsequent applications and orders receive new docket numbers even if they pertain to an investigation in which an application and order have already been docketed. Gorman Decl. ¶ 10.

The United States Attorney's Office receives a copy of each order that the Court enters stamped with the docket number, and it maintains these orders in the files for each of its investigations. But the tracking system that it uses does not include a field for tracking the

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

docket numbers assigned to investigatory processes sought before a case is charged, and the United States Attorney's Office does not add GJ numbers to its internal tracking system each time it seeks process in an investigation.[12]  Gorman Decl. ¶ 14.  As a result, neither the Court nor the United States Attorney's Office has a ready means of associating applications and orders with particular investigations using GJ or MJ numbers.  McCool Decl. ¶ 17; Gorman Decl. ¶ 15.

For all these reasons, if the Clerk of the Court were to produce a list of every GJ and MJ matter filed since 2011 with the caption information entered on the docket, the United States Attorney's Office could not determine in many cases whether an item on the list pertained to one of the types of processes at issue in the petition.  Gorman Decl. ¶ 15.  To make that determination, it would need both the list and a copy of any order, application, and associated materials for each matter on the list. Gorman Decl. ¶ 15.  Even then, it could not determine which investigation each matter was a part of without conducting a case-by-case review of the application and supporting materials and attempting to make that determination based on those documents.[13]  Gorman Decl. ¶ 15.  That task would require every Assistant United States Attorney who has worked on criminal matters since 2011 to review the list and the underlying application materials to determine which ones were associated with his or her investigations.  Gorman Decl. ¶ 15.  Even if each Assistant United States Attorney were to do so in good faith, the effort would no doubt miss some applications, including a significant number of applications made by attorneys who no longer work for the United States

---

[12] The United States does add the criminal case number to its internal tracking system once a case is charged.  Gorman Decl. ¶14.

[13] Even with the application and related materials, determining what investigation a particular process related to would be difficult in many cases, particularly for PR/TT and 2703(d) orders. Applications for wiretaps contain lengthy and detailed recitation of facts and identify the targets of the wiretap, and affidavits for SCA warrants contain a statement of the facts supporting probable cause.  Those facts would assist the United States Attorney's Office in determining the particular investigation for which the wiretap or SCA warrant was sought.  In contrast, the statutes authorizing PR/TT orders and 2703(d) orders do not require a full recitation of all of the facts developed in the investigation, and associating the application and order with a particular investigation would be far more difficult, and in many cases practically impossible.  Gorman Decl. ¶ 15.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Attorney's Office.  Gorman Decl. ¶ 15.  And even if the United States Attorney's Office was able, with assistance from the Clerk's Office, to identify all of the GJ and MJ matters at issue from the past seven years, it would not be possible without a case-by-case review of each matter to determine whether the underlying investigation is open or closed, and/or whether there is a continued need for sealing (for example, as a result of an ongoing related investigations).  Gorman Decl. ¶ 17.

### B.       Stored Communications Act Warrants

As noted above, when the United States seeks the contents of wire or electronic communications from a service provider, it generally uses a warrant authorized under Section 2703(a) or (b) of the Stored Communications Act, following the procedures of Federal Rule of Criminal Procedure Rule 41 (an SCA warrant).  In this district, SCA warrants are docketed on the MJ docket and assigned MJ numbers like traditional search warrants, even though they are "more analogous to a subpoena than to a traditional search warrant with respect to (1) method of execution and (2) *ex ante* opportunity to challenge compelled disclosure."  *In the Matter of the Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, __ F. Supp. 3d __, 2018 WL 1129660 at *17 (D.D.C. Feb. 26, 2018).  Where the government has obtained a nondisclosure order under 18 U.S.C. § 2705(b) and an order to seal the SCA warrant and application on the ground described above, the docket is also sealed.  Gorman Decl. ¶ 6.  The government usually obtains sealing orders for SCA warrants to protect the investigation at issue, and in light of the amount of information disclosed and the nondisclosure provisions of the Stored Communications Act.  Gorman Decl. ¶ 6.

In 2015, the United States Attorney's Office in this district adopted a practice of moving to unseal search warrants subject to a sealing order, for which the investigation has closed, and for which it has determined that there are no compelling reasons for continued sealing.[14]  As part of this practice, the United States Attorney's Office has moved to unseal

---

[14] There are warrants, including SCA warrants, where sealing will be justified for years, even if an investigation has closed.  For example, a warrant in a national security investigation might contain sensitive information that cannot be unsealed and publicly disclosed even after a target has been

1   SCA warrants when there was no longer a need for sealing.[15] *See, e.g.*, *In the Matter of the Search*
2   *of Information Associated with a Hotmail Account*, No. 16-mj-00104 (October 27, 2017) (unsealing
3   SCA warrant on the government's motion).

4        The process of determining whether sealed applications and warrants can be unsealed
5   is burdensome.  Gorman Decl. ¶ 17.  It requires reviewing the application to determine, among
6   other things, whether it includes sensitive information or law-enforcement techniques and
7   whether some part of the investigation is still active.  Gorman Decl. ¶ 17.

8   **V.**    **Related Litigation**

9        The United States District Courts for the District of Columbia and the
10  Northern District of California have recently considered petitions similar to, though narrower
11  than, The Stranger's petition.

12      **A.**    *Matter of Leopold*

13       The petition in *In the Matter of the Application of Jason Leopold to Unseal Certain Elec.*
14  *Surveillance Applications & Orders*, __ F. Supp. 3d __, 2018 WL 1129660 at *7 (D.D.C. Feb. 26,
15  2018), sought backward-looking relief in the form of PR/TT and Stored Communication Act
16  applications and orders, except for those that related to an ongoing investigation, along with
17  a list of all docket numbers, in closed investigations, associated with government applications
18  and orders issued under these authorities.  *Id.* at *1.  In addition, the petition sought forward-
19  looking relief in the form of a presumptive 180–day expiration date for all sealing or non-
20  disclosure orders for such materials, extendable for ongoing investigations or in exceptional
21  circumstances.  *Id.* at *1.

---

24  indicted, and tried.   Similarly, a warrant obtained in a case in which no one was ever charged may
    remain sealed to protect the target's privacy interests.
25     [15] Although SCA warrants differ from search warrants in ways that mean that they are not
26  subject to a First Amendment or common law right to access even after an investigation has closed,
    the United States Attorney's Office has, in the interest of transparency, included them in the practice
27  of moving to unseal sealed warrants described above.  The decision to move to unseal SCA warrants
    in these circumstances does not, however, suggest that the United States could or should adopt a
28  similar practice for other types of investigatory processes, for the reasons set forth herein.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In response to the petition, the United States Attorney's office for the District of the District of Columbia and the Court agreed to release three sets of information: (1) the docket numbers and limited docket information for PR/TT and certain SCA matters filed between 2008 and 2016, *id.* at *4-6; (2) redacted PR/TT applications and orders from a sampling of such matters filed in 2012, *id.* at *7; and (3) agreed-upon categories of information extracted from ten percent of PR/TT matters filed in 2012, *id.* at *10.

Each of these releases proved to be burdensome.  The *Matter of Leopold* decision explains that the parties began the process of unsealing these materials by considering PR/TT orders from 2012.  *Id.* at *4.  The Court released lists of 235 matter numbers for PR/TT matters that the relevant United States Attorney's Office initiated in 2012.  *Id.* at *5.  These lists contained the case number, the caption, the dates of the application's filing and entry onto the caption, and the application's CM/ECF case type.  *Id.*  The Court subsequently released lists of the same information for matters initiated between 2008 and 2016.  *Id.*  The effort to compile these lists required the "manual review of each PR/TT matter's docket."[16]  *Id.* at *4 n.7.

Although the petitioner also sought similar lists of 2703(d) orders, the court refused to provide those lists because of "the myriad challenges, and resultant burden, of compiling such a list."  *Id.* at *6.  The court explained that because the "lack of uniform captions or textual form used for these records," "led to inconsistent docketing 'on the [CM/ECF] system for these records,' accurate identification of § 2703(d) matters was challenging and time-consuming, and that its effort to compile a list of 2703(d) orders for a single one-year period

---

[16] In the District of Columbia, the clerk's office was able to identify PR/TT orders by searching for the term "Pen Register" in the CM/ECF system, but manual review of each docket was nevertheless required because applications for PR/TT orders are made not just by the United States Attorney's Office, but by other government agencies as well.  In this district, as explained above, PR/TT applications do not always include the term pen register or trap and trace device in the caption, so manual review of the entire GJ docket would also be required.  The effort would also be more complicated in this district than it was in the District of Columbia because the United States Attorney's Office in this district applies for orders authorizing more than one type of process in a single application, Gorman Decl. ¶ 9, an issue that the court does not appear to have encountered in *Matter of Leopold*.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

had taken the Clerk's Office "over one month." *Id. (*citation omitted).  The court also noted that "determining whether § 2703(d) materials implicated grand jury subpoenas, to which obligations of secrecy attach under Rule 6(e) of the Federal Rules of Criminal Procedure" would be necessary and "likewise would require time-consuming review of individual dockets." *Id.*  Instead of providing lists of 2703(d) matters and limited docketing information about those matters, the court provided a list of matters generated by agreed-upon search terms in order to provide the parties assistance in "understand[ing] the volume of Section 2703(d) and SCA Search Warrant matters at issue." *Id.* at *6.

Meanwhile, after the Clerk's Office produced a list of all PR/TT matters from 2012, the United States Attorney's Office reviewed a sample of ten cases in which it had sought PR/TT orders in 2012.  *Id.* at *7.  The process of determining whether a matter could be unsealed was painstaking.  *Id.* at *8.  "[R]oughly half of the AUSAs who had filed particular PR/TT applications in 2012 no longer worked at the USAO," and "those AUSAs still employed had difficulty matching PR/TT applications with particular docket numbers, given that the [office's] internal tracking system organizes files using internal reference numbers different from the docket number assigned by the Clerk's Office to a particular matter." *Id.*

The relevant United States Attorney's Office eventually concluded that four of the ten matters were closed and could be unsealed, but that it was not possible to make an informed decision on unsealing for the other six.  *Id.* at *7 (D.D.C. Feb. 26, 2018).  The office redacted the applications and orders from the four matters that it had determined could be unsealed so that they could be filed publicly.  *Id.*

The redacted pages consisted of 127 pages of materials.  *Id.*  The redacted pages "stripped of identifying information about the individual or the underlying criminal activity under investigation," showed that PR/TT applications "largely used the same language to describe the (1) the service provider from whom the USAO sought to compel production, (2) the scope of legal authority sought, (3) the need for such authority, (4) the steps the USAO would take in exercising that authority, including technical assistance to be required of the

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

service provider, and (5) a request for sealing." *Id.* The process of redacting just those four sets of pleadings was time-consuming and burdensome. *Id.*

Because the process of unsealing and redacting these four PR/TT matters proved painstaking, the court proposed that the United States Attorney's Office use a process of extracting certain information from applications and orders instead of redacting and unsealing them. *Id.* at *8-9. The United States Attorney's Office extracted this information from a ten-percent sample of PR/TT orders from 2012, or a total of 24 orders. *Id.* at *9. The process of extracting information from these applications took eight hours, and the Court concluded that, although extraction was less difficult than unsealing and redacting, it was still "burdensome," and 720 hours was a reasonable estimate of how long it would take to extract information from all PR/TT orders entered between 2008 and 2016. *Id.* at *24.

Although the efforts to produce all of these materials had proceeded by consent, the parties reached an impasse when the petitioners refused to agree to extractions of ten-percent samples from PR/TT orders for other years and continued to insist on broad prospective changes to the court's docketing practices. The parties then briefed whether the petitioners had rights to the materials that they sought. *Id.* at *10. In their briefing, the petitioners sought the following additional backward-looking relief: extracted information about all PR/TT applications made from 2008 to 2016; and case numbers and limited docket information for all 2703(d) matters from 2008 to the present. *Id.* at *14. The petitioners did not seek backward-looking relief for SCA warrants. Their claims for forward-looking relief were for limited docket information for PR/TTs, 2703(d), and SCA warrants and the periodic unsealing of dockets. *Id.*

The court concluded that the petitioners did not have a First Amendment right to any of these materials because there was no historical tradition of access to applications and orders authorizing pre-indictment investigatory measures at issue. *Id.* at *19. It concluded that the petitioners did have a common law right to access the materials, but that the right was outweighed for the most part by the significant burden that further disclosures would impose on the Court and the United States Attorney's Office. *Id.* at *19-31. It concluded that it had

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

what it termed "administrative authority" to make certain docketing information available to the public prospectively, that changes that the court had made in the course of the litigation made it possible to make the information available without placing too large a burden on either the court or the United States, and that doing so would satisfy any common law right of access to the information. *Id.* at *31. With that exception, the court concluded that the burden that further relief would put on the court and the relevant United States Attorney's Office weighed against releasing the materials sought. *Id.* at 31. It explained that a "court properly may cite 'administrative burdens' to 'justify the denial of across-the-board' disclosure where a petitioner does not make an '*individual request*' for disclosure 'in a *specific proceeding*,' but seeks wholesale disclosure of sealed materials across entire categories of matters initiated over a period of years." *Id.* at *26 (quoting *In re Sealed Case*, 199 F.3d 522, 527 (D.C. Cir. 2000) (emphasis in original)).

**B.**    ***Petition of Granick***

The petitioners in *In re Petition of Jennifer Granick and Riana Pfefferkorn to Unseal Technical-Assistance Orders and Materials*, No. 16-mc-80206-KAW (N.D. Cal.), sought access to applications and other supporting documents, orders, and warrants filed at any time in "cases in which there is no longer any need for secrecy" under the Wiretap Act, the Stored Communications, Act, the Pen Register Act, and the All Writs Act, and the public release of the docket sheets for all these same matters. The petitioners subsequently filed a narrower (though still broad) "Motion to Unseal Docket Sheets and Publicly Docket Court records," seeking the docket sheets for orders authorizing the use of PR/TT devices from the beginning of 2006 to the end of 2011. Order Den. Mot. Unseal Docs. & Publicly Docket Ct. Rs. at 1–3, *In re Jennifer Granick & Riana Pfefkorn*, No. 16–mc–80206–KAW (N.D. Cal. June 23, 2017).

The court then *sua sponte* questioned both the form of the petition and its authority to decide the issues presented by the motion. After obtaining supplemental briefing from the parties on that question, the court denied the motion. It held that "the scope of the relief sought by Petitioners is overbroad." Order Den. Mot. Unseal Docs. & Publicly Docket Ct. Rs. at 1–3, *In re Jennifer Granick & Riana Pfefkorn*, No. 16–mc–80206–KAW (N.D. Cal. June 23,

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2017).  It explained that determining whether unsealing was warranted required a case-by-case judgment that could not be undertaken wholesale.[17]

### RESPONSE TO THE PETITION

This Court should deny or dismiss The Stranger's backward-looking claims for docket sheets, orders, and applications for all five types of process at issue here for the reasons set forth herein.  It should deny or dismiss the forward-looking claims to the extent they seek a presumption in favor of the unsealing of orders and applications in future cases after 180 days have passed.  And it should deny or dismiss The Stranger's claims for prospective changes to the docketing system.  In the event that the Court chooses to exercise its administrative authority to make prospective changes to its docketing system, consideration of any such changes should be undertaken outside the context of this overbroad and meritless litigation, and with consideration of the different statutory authorities at issue.  If any docketing information is made available prospectively, it should be limited to case number and type of process sought, and even this limited information should not be made public for wiretaps.

## I.   The Qualified First Amendment and Common Law Right to Access Court Records

"'The law recognizes two qualified rights of access to judicial proceedings and records.'" *United States* v. *Doe*, 870 F.3d 991, 996–97 (9th Cir. 2017) (quoting *United States* v. *The Business Of The Custer Battlefield Museum And Store Located At Interstate 90, Exit 514, South Of Billings, Mont.*, 658 F.3d 1188, 1192 (9th Cir. 2011)).  There is "'a First Amendment right of access to criminal proceedings' and documents therein." *Id.* (quoting *Custer Battlefield*, 658 F.3d at 1192 (quoting in turn *Press-Enter. Co.* v. *Super. Ct. of California for Riverside Cty.*, 478 U.S. 1, 8 (1986) (*Press-Enter. II*))).  There is also "a common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Custer Battlefield*, 658 F.3d at 1192 (quoting in turn *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978))).

---

[17] On March 12, 2018, the court entered an order directing the parties to file supplemental briefing on *Matter of Leopold*.  Order Requiring Supplemental Briefing, *In re Jennifer Granick & Riana Pfefkorn*, No. 16–mc–80206–KAW (N.D. Cal. March 12, 2018).

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Whether a document qualifies as a judicial record under the common law test depends on "the role it plays in the adjudication process." *SEC* v. *Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013).

## A.     The First Amendment Right of Access

To determine whether a qualified First Amendment right of public access applies to a particular proceeding or document, courts apply the "experience and logic" test. *Press-Enter. II*, 478 U.S. at 9.  That test asks (1) "whether the place and process have historically been open to the press and general public"; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 8.

The Ninth Circuit has suggested that satisfying the logic requirement alone may be enough to establish a qualified First Amendment right of access.  *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008).  But because "history and experience shape the functioning of governmental processes," the two requirements are related.  *Press-Enterprise II*, 478 U.S. at 9.  And even when a plaintiff satisfies both the experience and logic requirements, that "establishes only a strong presumption of openness."  *Doe*, 870 F.3d at 997.  The "public still can be denied access if closure 'is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'"  *Times Mirror Co.* v. *United States*, 873 F.2d 1210, 1211 n.1 (9th Cir. 1989) (quoting *Press-Enter. Co.* v. *Superior Court of California, Riverside Cty.*, 464 U.S. 501, 509–10 (1984) (*Press-Enter. I*)).

## B.     The Common Law Right of Access

The common law provides a right "to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597.  As with the First Amendment right, the right is not absolute.  Instead, a "narrow range of documents is not subject to the right of public access at all because the records have 'traditionally been kept secret for important policy reasons." *Times Mirror Co.*, 873 F.2d at 1219.  Excepted court records include "grand jury transcripts and warrant materials in the midst of a pre-indictment investigation." *Id.*; *see also Douglas Oil Co.* v. *Petrol Stops N.W.*, 441 U.S. 211, 218–19 n. 9 (1979).

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 23

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.   The Stranger Demands Structural Changes to Which It Has No Right

### A.   The Stranger Is Seeking Structural Reforms That Are Not Available Under a Court's Supervisory Powers Over Its Records.

A party who seeks relief from a court under claim of right—that is, a party who invokes a court's power to decide a case—must do so in the context of an Article III case or controversy.  U.S. Const. art. III, § 2, cl. 1; *Spokeo, Inc.* v. *Robins*, ─── U.S. ───, 136 S. Ct. 1540, 1547-48 (2016), as revised (May 24, 2016).

The Constitution separates "the legislative power to make general law from the judicial power to apply that law in particular cases."  *Plaut* v. *Spendthrift Farm, Inc.*, 514 U.S. 211, 224 (1995).  A decision is not "judicial" in nature unless it is a ruling on "an actual controversy over an issue."  *District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462, 478 (1983) (internal quotation marks omitted).  In contrast, an "abstract declaration" of a new rule to be applied in the future is legislative or administrative rather than judicial.  *Id.* at 479.

The Stranger is not asking this Court to apply the First Amendment or common law right of access to court records to a claim for access to records in a particular case.  Instead, it seeks the exercise of legislative or administrative power, asking this Court to "'prescrib[e] the rules by which the duties and rights of every citizen are to be regulated.'"  *Plaut*, 514 U.S. at 221, quoting The Federalist No. 78, at 523.  It demands that this Court presumptively reverse all of the sealing orders that have been entered since 2011 for five categories of investigatory processes even though it has not shown that any particular sealing order is unlawful.  It asks for an injunction compelling this Court to make the dockets for all of those matters public.  It asks this Court to impose a presumption that any future sealing order for one of the processes at issue would expire after 180 days.  It demands an injunction compelling the United States to file an information sheet with each new application for an order authorizing one of the processes at issue to provide information about the investigation, including the agency seeking the order and the crime under investigation.  And it demands additional prospective changes to the docketing practices in this district.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The Stranger seeks to support its broad claims for relief by reference to *Nixon,* in which the Supreme Court observed that "every court has supervisory power over its own records and files." But the requirement that the judicial power be exercised in particular cases applies even when a petitioner seeks court records. A Court's authority to supervise its own records does not give it authority to consider just any petition so long as it concerns court records. Instead, the judicial power to supervise records applies to records and files in particular cases.[18]

The First Amendment and common law right to access court records have almost always been considered in the context of a claim for records in a particular case. *Matter of Leopold,* 2018 WL 1129660 at *26. There is little precedent supporting the idea that either the First Amendment or the common law right to access court records might entitle a petitioner to structural reforms in a court's record-keeping or sealing practices. *Id.* The Ninth Circuit has made clear that a court's supervisory power over its own records and files is a component of its Article III power instead of a separate authority, observing that "courts have inherent power, *as an incident of their constitutional function*, to control papers filed with the courts within certain constitutional and other limitations." In *Matter of Sealed Affidavit(s) to Search Warrants Executed on February 14, 1979,* 600 F.2d 1256, 1257 (9th Cir. 1979) (emphasis added).

This supervisory power over records gives a court authority to consider claims concerning records from cases over which it has jurisdiction. A court with jurisdiction over a case has authority to consider a claim for records from the case because the claim is within its ancillary jurisdiction "'to adjudicate and determine matters incidental to the exercise of [the court's] primary jurisdiction over a cause under its review.'" *United States* v. *McIntosh*, 833 F.3d 1163, 1172 n.2 (9th Cir. 2016); *see also United States* v. *Sumner*, 226 F.3d 1005, 1013 (9th Cir. 2000) (ancillary jurisdiction "extends to proceedings concerned with the pleadings, the processes, the records, or the judgment in the principal case."); *In re Special Grand Jury (for*

---

[18] A court also has a separate authority to prescribe the rules of practice before it. 28 U.S.C. § 2071. And it has administrative authority to establish practices and procedures to govern its own docketing practices. *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000); *Matter of Leopold*, 2018 WL 1129660 at *30 n.38. But these authorities are separate from the judicial power to supervise records in a particular case.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 25

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Anchorage, Alaska*), 674 F.2d 778, 783 (9th Cir. 1982) (district court had jurisdiction over a motion by the subjects of a grand jury investigation for access to certain ministerial grand jury records because the motion was ancillary to the court's primary jurisdiction over the grand jury investigation).

But *Nixon* contains no suggestion that a court's supervisory power over its own records is broader than the power to decide cases and controversies.  And *Nixon* contains no suggestion that a party may demand that one judge impose a presumption that sealing orders entered by other judges on the court should be reversed, or demand wholesale changes to the court's docketing practices, simply because the demands relate to the court's records in gross.

Instead, *Nixon* reflects a traditional exercise of judicial power.  *Plaut*, 514 U.S. at 224 (distinguishing judicial and legislative power).  The petitioners in *Nixon* were broadcasters who moved for access to tape recordings of conversations played in the criminal trial of individuals charged with, among other things, conspiring to obstruct the investigation of the 1972 burglary of the Democratic National Committee headquarters.   *Nixon*, 435 U.S. at 592.  The court that considered the motion had jurisdiction over the criminal trial and ancillary jurisdiction over the motion because it concerned records from the trial.[19]  *Id.* at 594-95.  To decide whether the movants were entitled to make copies of the tape recordings in the court's records, the court interpreted the common law right at issue and decided how that right applied to the specific records at issue.  *Id.*  Indeed, the *Nixon* Court specifically noted that an access-to-court-records claim is "best left to the sound discretion of the trial court," and that the trial court's exercise of that discretion necessarily depends on the "relevant facts and circumstances of the particular case."  435 U.S. at 599.  The *Nixon* decision does not support the conclusion that this Court has supervisory authority over all of The Stranger's claims simply because The Stranger seeks access to court records.

---

[19] The district court judge presiding over the criminal trial transferred jurisdiction over the motion to a different district court judge while the trial was ongoing because the criminal trial was consuming all of the first judge's time.  *Nixon*, 435 U.S. at 594-95.  The second judge transferred the motion back to the trial judge once the trial ended.  *Id.*

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 26

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Like *Nixon, In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 487 (Foreign Intel. Surv. Ct. 2007), on which The Stranger also relies, does not support its broad claims. In that case, the movant's claim was made under a Foreign Intelligence Surveillance Court rule providing for a motion to the court to release one of its orders. The motion, directed at the court itself, sought the release of an order from a specific date and subsequent related orders. *Id.* at 485 n.2. The court's opinion analyzed whether the FISC's specialized jurisdiction, as delineated by Congress in the Foreign Intelligence Surveillance Act, permitted it to adjudicate the motion. *Id.* at 486-87. But the court did not suggest that its supervisory authority over its records extended to claims for records in gross.

The *Nixon* and *In re Motion for Release of Court Records* decisions do not support the extension of a court's supervisory power in a particular case over which the court has primary jurisdiction beyond the normal confines of a judicial proceeding as defined in *Plaut*. That Article III jurisdiction extends to ancillary claims for court records in particular matters does not mean that it extends to wholesale claims for broad categories of court records divorced from any particular controversy. The Stranger's implicit contention that a Court's supervisory power over its own records gives it authority to consider any suit making claims that are arguably within the court's administrative purview is inconsistent with the well-settled understanding of judicial power. Even if this Court were to conclude that the requested relief is not outside the scope of Article III, the nature of the retrospective claims for orders, applications, and underlying materials makes them fundamentally unsuited for consideration and resolution at a wholesale level, as explained below.

The Stranger's demand for relief is also beyond this Court's authority for separate reasons. The matters that The Stranger seeks were sealed by court order and cannot be unsealed without modifying or rescinding the applicable sealing order. But this Court did not enter the sealing orders in question, and the relief that it seeks is not a request for review of a subordinate court's sealing order but instead a request for wholesale unsealing of sealing orders entered by other judges of this court untethered to the facts of a particular case. This Court

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

should hesitate to hear a claim seeking reversal of sealing orders entered by other judges of this Court. *Cf. Hartford Courant Co.* v. *Pellegrino*, 380 F.3d 83, 98 (2d Cir. 2004).[20]

The petition also does not name a defendant. The failure to identify a defendant violates the "most fundamental rule" for instituting a civil action—"that there actually be parties." 13 Charles Alan Wright et al., Federal Practice and Procedure § 3530, at 673 (3d ed. 2008). The failure to name a defendant can be overcome when the court is satisfied that a suit includes a defendant, but in this case each of the entities against whom the relief sought would appear to run—the court itself, the judges of the court, the clerk of the court, or the United States Department of Justice—is entitled to sovereign immunity, and The Stranger's failure to identify a defendant thus includes a corresponding failure to identify a waiver of sovereign immunity. In *Alfriend* v. *U.S. Dist. Court for the N. Dist. of California*, 642 F. App'x 791 (9th Cir.) (unpublished), *cert. denied* 137 S. Ct. 459 (2016), *reh'g denied* 137 S. Ct. 723 (2017), the Ninth Circuit dismissed a challenge to district court rules in California because the plaintiffs failed to explain under what theory the defendant judges were subject to suit. This Court could do the same.

## B.     Two Similar District Court Proceedings Support Dismissal Here

As explained, two other district courts have recently considered petitions similar to that of The Stranger. Although neither court explicitly concluded that the petition sought relief that was so broad that it went beyond the judicial power to decide specific cases and controversies, both courts noted that the claims were unprecedented in their breadth.

---

[20] The petitioners in *Matter of Leopold* petitioned under Local Rule 57.6 for the D.C. District Court, which provides that an interested party may make a motion seeking relief relating to a criminal case in the miscellaneous docket of the court. *Matter of Leopold*, Dkt. No. 1, No. 13-mc-00712-BAH (D.D.C.). This Court does not have a similar local rule. Instead, the local rules provide that a "non-party seeking access to a sealed document may intervene in a case for the purpose of filing a motion to unseal the document." Local Rules, W.D. Wash. LCR 5(g)(8). But The Stranger has not intervened in any case. And even if this Court did have a local rule like the one adopted in the District of Columbia, the court hearing *Matter of Leopold* does not appear to have questioned whether its local rule permitted a motion divorced from any particular case, and "drive-by jurisdictional rulings ... have no precedential effect." *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In *Matter of Leopold*, the United States Attorney's Office and the Court undertook painstaking work to make some of the materials sought public.  2018 WL 1129660 at *2-9. But when the court eventually confronted whether the First Amendment or the common law provided petitioners with a right to more, it concluded that the petitioners did not have a First Amendment right to the materials it sought because there was no historical tradition of access to applications and orders authorizing the types of pre-indictment investigatory measures at issue.  *Id.* at *19.  It concluded that the petitioners had a common law right to access the materials, but that the right was outweighed for the most part by the significant burden that disclosing the materials would impose on the Court and the United States Attorney's Office. *Id.* at *19-31.

In reaching the conclusion that petitioners were entitled only to limited prospective relief, the *Matter of Leopold* court observed that claims seeking access to court records are almost always claims for specific records in particular cases, and that the petitioners "identify no judicial decision recognizing such a broad right of access to broad categories of sealed materials filed over a period of years, let alone when such sealed materials are quintessentially sensitive because they relate to the exercise of statutory authorities to collect evidence in criminal investigations."  *Id.* at *26.

The *Petition of Granick* court likewise denied the petitioner's motion because the scope of the relief sought was "overbroad."  Order Den. Mot. Unseal Docs. & Publicly Docket Ct. Rs. at 1–3, *Petition of Granick*, No. 16–mc–80206–KAW (N.D. Cal. June 23, 2017).  The court explained that determining whether unsealing was warranted was "not practicable, as each case needs to be evaluated on an individual basis to ensure that unsealing is permissible" and because it would require "this Court reverse the sealing orders of other judges in this district, which this Court lacks the authority to do."

These statements make clear that both courts were troubled by the breadth of the relief sought.  That concern was well placed.  Neither the First Amendment nor the common law right to access court records gives a petitioner a right to demand structural reforms to a court's or an institutional litigant's record-keeping practices or the right to seek thousands of court

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 29

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

records in one go.  In the similar context of a request that a court publicly docket all ancillary grand jury proceedings, the D.C. Circuit concluded that the request "for a generic rule requiring public docketing for all grand jury ancillary matters is completely unprecedented" and affirmed the district court's rejection of the request.  *In re Sealed Case*, 199 F.3d 522, 525 (D.C. Cir. 2000).

A court certainly has authority to make administrative changes to its record-keeping practices in order to improve transparency, and this Court may decide that doing so would be beneficial here.  But The Stranger does not have a right to demand that sort of structural administrative change.

## III.   The Stranger Lacks Standing for Its Claim for the Unsealing of Dockets, Orders, and Underlying Materials in all Five Categories of Cases

This Court should dismiss certain of The Stranger's claims for lack of standing even if it concludes that its supervisory power over its records extends to those claims.  The Stranger has failed to establish that it is injured by the lack of access to docket, applications for, and orders authorizing, the five types of process at issue, either historically or prospectively.

Standing is "an essential and unchanging part of the case-or-controversy requirement." *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The principle that the party invoking federal jurisdiction must establish standing ensures "that federal courts do not exceed their authority as it has been traditionally understood" by limiting "the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."  *Spokeo, Inc.* 136 S. Ct. at 1547.

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S. at 560.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Id.* at 560–561.  The injury-in-fact requirement "requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" *Spokeo, Inc.* 136 S. Ct. at 1545 (quoting *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–181 (2000)).

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 30

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Standing to assert one claim does not create standing to assert other claims arising from the same or related facts.  Standing "is not dispensed in gross," and the plaintiff must "demonstrate standing separately for each form of relief sought."  *DaimlerChrysler Corp.* v. *Cuno*, 547 U.S. 332, 352, 353 (2006).

A "[c]oncrete injury, whether actual or threatened" is "that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution." *Schlesinger* v. *Reservists Comm. to Stop the War*, 418 U.S. 208, 220-221 (1974).  It "adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action challenged as unlawful," *id.* at 221, and ensures that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action," *Valley Forge Christian Coll.* v. *Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

To establish injury, "the complaining party [is] required to allege a specific invasion of th[e] right suffered by him." *Schlesinger*, 418 U.S. at 224 n.14.  That invasion must be "actual," "distinct," "palpable," and "concrete," and not "conjectural" or "hypothetical."  *Allen* v. *Wright*, 468 U.S. 737, 750-751, 756, 760 (1984), *abrogated on other grounds by Lexmark Int'l* v. *Static Control Components*, 134 S. Ct. 1377 (2014) (internal quotation marks omitted).  An "[a]bstract injury is not enough," *O'Shea* v. *Littleton*, 414 U.S. 488, 494 (1974), because injury-in-fact "is not an ingenious academic exercise in the conceivable *** [but] requires *** a factual showing of perceptible harm," *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 499 (2009) (internal quotation marks omitted).

An assertion that the government is failing to follow the law is not sufficient to establish standing.  Federal courts lack jurisdiction to hear suits "claiming only harm to [the plaintiff's] and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large."  *Lujan*, 504 U.S. at 573–574.  The desire to seek "vindication of the rule of law *** does not suffice" to establish standing.  *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 106 (1998).

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 31

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In *Lance* v. *Coffman*, 549 U.S. 437, 441–42 (2007), the Supreme Court held that the plaintiffs lacked standing because "[t]he only injury [they] allege is that the law ... has not been followed."   In *Allen*, 468 U.S. at 754, the Court noted that it has "repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."   And in *Schlesinger,* 418 U.S. at 219–20, the Court held that the "generalized interest of all citizens in constitutional governance ... is an abstract injury" that is an insufficient basis for standing.

The Stranger's claimed injury from the denial of access to the materials that it seeks is not concrete and particularized within the meaning of Article III.  The Stranger claims (Pet. 1, 4-5) only a general interest in monitoring and reporting on the United States' use of the types of process at issue, both in the past and on an ongoing basis, to better understand and inform the public on their use and what it deems the government's access to "private information."[21] It suggests that maintaining orders, applications, and underlying materials under seal prevents the public from knowing how the Court is interpreting and applying the statutory authorities at issue.

These interests are too general to establish an injury from the denial of access.  A litigant lacks standing to "seek wholesale improvement" of a government program "by court decree, rather than in the offices of the Department or the halls of Congress where programmatic improvements are normally made."   *Lujan* v. *Nat'l Wildlife Fed'n.*, 497 U.S. 871, 891 (1990). Instead, the case or controversy requirement requires that "the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action."   *Id.* at 891.

---

[21] The Stranger's conception of "private information" does not appear to be limited to information protected by the Fourth Amendment.  It is well established that some PR/TT and 2703(d) orders do not implicate Fourth Amendment privacy interests.  *Smith*, 442 U.S. at 742 (no subjective expectation of privacy in telephone numbers dialed); *United States* v. *Forrester*, 512 F.3d 500, 509 (9th Cir. 2008 (no expectation of privacy in to and from information on an email communication or the internet protocol addresses used); *United States* v. *Perrine*, 518 F.3d 1196, 1204-05 (10th Cir. 2008) ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectations.").

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 32

1    That is true even though The Stranger is a newspaper.  The press has no superior right
2    to access court records than the public.  *Nixon*, 435 U.S. at 602–03, 609 ("[t]he First
3    Amendment generally grants the press no right to information about a trial superior to that of
4    the general public"); *Branzburg* v. *Hayes*, 408 U.S. 665, 684 (1972) (The "First Amendment does
5    not guarantee the press a constitutional right of special access to information not available to
6    the public generally.")

7    The very breadth of The Stranger's claims shows that the claims are not grounded in a
8    particularized injury that satisfies the standing requirement.  The Stranger's retroactive claim
9    for orders and underlying materials does not seek the unsealing of a particular order or a small
10   set of like orders to which this Court might apply a single governing standard.  To the contrary,
11   The Stranger concedes (Pet. 19) that orders in all five of the categories identified in the petition
12   are appropriately sealed when they are entered.  The Stranger also concedes (Pet. 19-21) that
13   whether a particular order should be unsealed turns on the governing statutory scheme and
14   the facts of the underlying investigation, which will vary with each case.  These concessions
15   are compelled by precedent.  The Ninth Circuit has held that when the materials sought are
16   ex parte in nature, and occur at the investigative, pre-grand jury, pre-indictment phase of what
17   may or may not mature into an indictment where privacy and secrecy are the norm, there is
18   no constitutional or common law right to access them when an investigation is ongoing.  *Times
19   Mirror Co.*, 873 F.2d at 1216.[22]

20   The petition nevertheless seeks an order from this Court unsealing all applications,
21   orders, and the dockets for them in the five categories of cases that are more than 180 days
22   old, unless the government shows that the orders should remain sealed.  In so doing, it asks

---

24   [22] These concessions are significant for a separate reason—they make clear that The Stranger
25   cannot credibly claim to be seek *facial* invalidation of this Court's docketing and sealing practices under
     the First Amendment, that is, it cannot show that there are no sets of circumstances in which this
26   Court's docketing and sealing practices are constitutional.  *Am. Civil Liberties Union v. Holder*, 673 F.3d
     245 (4th Cir. 2011) (holding that plaintiffs who conceded that "at least some qui tam complaints would
27   warrant being filed under seal . . . fail[ed] to meet the rigorous requirements necessary to win a facial
     First Amendment challenge" to the sealing provisions of the False Claims Act) (citing *Wash. State
28   Grange v. Wash. State Republican Party,* 552 U.S. 442, 450–51 (2008)).

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 33

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

this court to decide in the abstract that it has the right to unsealing at some point in time and accordingly is entitled to a presumption in favor of unsealing after 180 days unless the United States can show a continuing need for sealing.

Determining which applications and orders pertain to open investigations, and whether there is good cause to keep a particular closed matter sealed, would be an enormous undertaking. The practical difficulty of doing so results from the breadth of the petition, which seeks a broad swath of documents filed over many years. The Stranger fails to acknowledge, much less grapple with, this problem (which is discussed at greater length below), but this problem distinguishes this litigation from the First Amendment and common law right of access cases upon which petitioners rely and provides further support for the view that its claim is simply too abstract to satisfy the requirements of Article III.

The Stranger's forward-looking claim likewise seeks the wholesale unsealing of application, orders, and dockets rather than the unsealing of a particular or small set of like orders to which this Court might apply a single, governing standard. The requested relief is an order directing the judges of this district to presume that any sealed order that they enter in five separate categories of matters should be unsealed after 180 days unless the government establishes a need for continued sealing, and the prospective unsealing of dockets. But once again, The Stranger implicitly concedes that court orders in all five categories of cases are appropriately sealed when they are first entered, and it sets forth no concrete facts on which this Court might determine whether, and at what point, a particular order might be required to be unsealed.

The Stranger's view of the First Amendment and common law right to access court records is exceedingly broad. Nevertheless, by recognizing that the United States must be given an opportunity to move for continued sealing under the presumptive unsealing regime that it seeks, The Stranger implicitly concedes that determining whether a particular order and underlying materials should be unsealed depends on the specific facts of the investigation. The same secrecy concerns that justify the initial sealing of a matter will justify continued sealing where fugitives are at large, ancillary investigations are active, confidential informants

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 34

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

or undercover agents were used, sensitive investigatory techniques are described, or the identities and private information about victims, witnesses, or unindicted coconspirators are at issue.  Establishing a presumption in favor of unsealing after 180 days will require the court that sealed the process to revisit that decision on an ongoing basis even if the order pertains to a longterm, complex investigation.  Moreover, it is at odds with the statutory regime that presumes sealing until otherwise ordered.

Even when an investigation has closed, information identifying an individual as cooperating with law enforcement can place the safety of cooperating witnesses and defendants in jeopardy, and detailed affidavits supporting any use of criminal process may provide a road map to the techniques law-enforcement agencies use to investigate criminal activity.  Additionally, the privacy interests of individuals implicated, but not charged, in a federal criminal investigation are significant and persist at least so long as they remain alive.

These types of interests cannot be evaluated wholesale.  Because The Stranger's claimed denial-of-access injury is not particularized to the records of a particular investigation or criminal case, it does not provide a sufficiently concrete context to decide whether the unsealing relief that it seeks is warranted.

For a controversy to be "real or substantial," it must "admit[] of specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Aetna Life Ins. Co. of Hartford, Conn.* v. *Haworth*, 300 U.S. 227, 241 (1937).  The claims for orders and underlying materials here fail to meet that standard because the abstract and indefinite injury that the The Stranger is effectively seeking an opinion advising that some sealing orders may have become, or may in the future become, unlawful.  *Fed. Election Comm'n* v. *Akins*, 524 U.S. 11, 23 (1998) (harm of an "abstract and indefinite nature—for example, harm to the common concern for obedience to law" is insufficient to establish standing).  Providing that opinion is not within this Court's Article III power.

That is true even if no one could establish standing for these claims; "[t]he assumption that if respondents have no standing to sue, no one would have standing, is not a reason to

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 35

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

find standing." *Schlesinger*, 418 U.S. at 227.  It is not true, in any event, that no one can establish standing to seek these materials; the press and the public can seek access in particular cases where the question of access to dockets, applications, and orders, and the need for continued secrecy can be decided in the concrete context of a particular investigation.  The Stranger's contention (Pet. 16) that "the press and the public have no ability to monitor and make particularized requests to unseal information in specific cases" ignores the fact that in many instances applications and orders in these categories are disclosed in post-indictment discovery.[23]

Although these investigatory processes and the dockets for them are sealed, the applications and orders for them do not necessarily remain secret if charges result. When the investigation results in criminal charges, orders authorizing the use of one of these investigatory processes are typically disclosed to the defendant in discovery, sometimes under a protective order.  Gorman Decl. ¶ 18.  In cases in which no criminal charges result, the dockets remain sealed and the applications and orders do too, as with grand jury and other investigative processes more generally.  But a target may still learn about the process if a third-party service provider informs them that it was compelled to provide account information about them to the government, either because it was not subject to a nondisclosure order or because the order terminated. Criminal defendants have incentives to challenge the government's use of these types of processes and frequently do.  *See, e.g.*, *Forrester*, 512 F.3d at 509; *United States* v. *Corbitt*, 588 F.App'x 594 (9th Cir. 2014) (unpublished); *United States* v. *Carpenter*, 819 F.3d 880 (6th Cir. 2016), *cert. granted Carpenter* v. *United States*, 137 S. Ct. 2211 (2017).  Service providers and uncharged targets challenge the government's use of these types of processes as well.  *See, e.g.*, *In re Nat'l Sec. Letter*, 863 F.3d 1110 (9th Cir. 2017); *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(d)* v. *Applebaum*, 707 F.3d 283, 286-87 (4th Cir. 2013); *Microsoft Corp.* v. *U.S. Dept. of Justice*, 233 F. Supp. 3d 887 (W.D. Wa. 2017).

---

[23] Several years ago, petitioner made a successful effort to obtain the docket for an ancillary grand jury proceeding.  *United States* v. *Index Newspapers LLC*, 766 F.3d 1072, 1091-92 (9th Cir. 2014).

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 36

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In support of standing, The Stranger cites (Pet. 12) cases holding that members of the public have standing to move to unseal criminal proceedings. But those cases concerns motions to unseal particular proceedings. They give no guidance on whether *this* dispute is sufficiently concrete and particularized to give rise to standing.

Finally, it is no answer to the lack of standing to recharacterize the claim as a claim that seeks not the records themselves but a presumption in favor of unsealing after 180 days. The Stranger has to establish that it has an injury, and its claimed injury is from the denial of access to records, not a denial of a presumption in favor of unsealing. As with its other claims, the Stranger makes no concrete claim that it is entitled to such a presumption in the context of a particular investigation or case. Instead, it asks this Court to decide, in the "rarified atmosphere of a debating society," that such a presumption would be justified in the run of cases. That is a policy question, not a claim asserted in the context of a concrete and particularized injury.

## IV.    The Stranger's Claims to Materials Under the Wiretap Act Lack Merit

If this Court concludes that it has authority to reach the merits of at least some part of the petition, it should conclude that all of The Stranger's claims should be dismissed for lack of merit to the extent that they seek dockets, applications, orders, or other materials for matters under the Wiretap Act. The Stranger claimed right to access these materials is wholly without merit.

The Wiretap Act (which is also commonly referred to as Title III of the Omnibus Crime Control and Safe Streets Act of 1968) creates a comprehensive scheme limiting the use of various forms of electronic surveillance, providing under what circumstances electronic surveillance may be employed, and controlling the use of information obtained by such means. Among other things, the statute strictly regulates who may intercept private wire, electronic, and oral communications and under what circumstances. 18 U.S.C. §§ 2516, 2518. It also sets narrow limits on when and how intercepted communications may be used or disclosed. *Id.* §§ 2515, 2517. Unauthorized interceptions and the disclosure or use of information obtained through unauthorized interceptions are subject to criminal or civil liability. *Id.* §§ 2511, 2520.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 37

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   "When addressing disclosure of the contents of a wiretap," the question is thus "whether Title

2   III specifically *authorizes* such disclosure, not whether Title III specifically prohibits the

3   disclosure, for Title III prohibits all disclosures not authorized therein." *Smith* v. *Lipton*, 990

4   F.2d 1015, 1018 (8th Cir. 1993) (*en banc*) (emphasis in original); *United States* v. *Dorfman*,

5   690 F.2d 1230, 1233 (7th Cir. 1982) (stating that there is "no evidence that [Congress] wanted

6   to create a right of public access" in Title III).

7          Consistent with this "comprehensive scheme" of limited disclosure and use of wiretap

8   materials, the Act strictly controls disclosure of wiretap applications and orders.  Section

9   2518(8)(b) of the statute directs that "applications made and orders granted under this chapter

10  shall be sealed by the judge." 18 U.S.C. § 2518(8)(b).  The provision further directs that "[s]uch

11  applications and orders shall be disclosed only upon a showing of good cause before a judge

12  of competent jurisdiction." *Id.*  Thus, under the Act, the proponent of disclosure shoulders

13  the burden of "showing" that disclosure is warranted.  And disclosure is "not a matter

14  committed to the discretion of the district court, instead it is a matter which statutorily requires

15  a factual finding of good cause." *In re Applications of Kansas City Star*, 666 F.2d 1168, 1176 (8th

16  Cir. 1981). "Good cause," in turn, "means that, at least minimally, there must be a need for

17  disclosure." *Id.* at 1176; *see also Nat'l Broadcasting Co.*, 735 F.2d at 55 (applying an even more

18  stringent interpretation of "good cause" to require that the proponent of disclosure qualify as

19  an "aggrieved person" within the meaning of Title III); *Kansas City Star*, 666 F.2d at 1176

20  (holding "[d]isclosure of [Title III] documents is not a matter committed to the discretion of

21  the district court, instead it is a matter which statutorily requires a factual finding of good

22  cause" and finding "[t]he desire of the news media to give the public the contents of sealed

23  wiretaps and related papers is not enough in itself to justify a finding of good cause under the

    statute").

24         Section 2518(8)(b), particularly when read in the context of Title III's restrictions

25  generally, creates a strong presumption against disclosure of wiretap applications and orders.

26  *United States* v. *Leal-Felix*, 665 F.3d 1037, 1041-42 (9th Cir. 2011) (*en banc*) (emphasizing that

27  the Court must consider both the text of a particular provision in a statute and the larger

28

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 38

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

statutory test).  Any doubt on that score would be resolved by Title III's legislative history, which makes plain that Congress intended for confidentiality of wiretap applications and orders to be the norm, and disclosure the rare exception. For example, the Senate Report on Title III describes Section 2518(8)(b) as providing that "applications and orders for authorization shall be treated confidentially."  S. Rep. No. 1097, 90th Cong., 2d Sess. 105 (1968) (the "Senate Report"), reprinted in 1968 U.S.C.C.A.N. 2112, 2194.  It also explains that "[a]pplications and orders may not be disclosed except incidental to the disclosure or use of the records themselves after a showing of good cause, for example, under [subparagraph] 10(a)" (which allows an "aggrieved person" to move to suppress the contents of an intercepted communication).  *Id.*

## A.     There Is No First Amendment Right to Access Wiretap Act Materials

The First Amendment does not require disclosure of wiretap applications and orders. As explained, courts ask "two questions to determine whether a qualified First Amendment right of public access applies to a particular proceeding or document: (1) 'whether the place and process have historically been open to the press and general public'; and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'"  *Doe*, 870 F.3d at 997 (quoting *Press-Enter. II*, 478 U.S. at 8).  Even when the experience and logic requirements are satisfied, however, the First Amendment right of access is not absolute; the test "establishes only a strong presumption of openness" that can be overcome by a compelling governmental interest.  *Id.* (quoting *Times Mirror Co.*, 873 F.2d at 1211 n.1 (quoting in turn *Press-Enter. I*, 464 U.S. at 509–10)).

These principles compel the conclusion that there is no First Amendment right to access the Wiretap Act materials at issue here. There is simply no tradition or history of wiretap dockets, applications, and orders being open to the press and public.  To the contrary, wiretap materials are purely a creature of statute, and the statute that created them expressly provides for their confidentiality.  As the Second Circuit explained in *In re New York Times Co.*, 577 F.3d at 410, although "wiretaps themselves pre-date wiretap applications, the introduction of wiretap applications is a more modern invention and, since the time of their creation in Title

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 39

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

III, have been subject to a statutory presumption against disclosure." For that reason, the court concluded that "these wiretap applications have not historically been open to the press and general public." *Id.*

Although the Ninth Circuit has held that logic alone can justify public access to court records and proceedings, *In re Copley Press*, 518 F.3d at 1026, The Stranger has not shown that public access to wiretap applications and orders would play such "a significant positive role" in the functioning of the wiretap process as to outweigh the substantial privacy concerns. To be sure, as with any governmental or judicial function, monitoring by the public would arguably serve to "enhance [] the quality and safeguard[] the integrity" of the wiretap process. *Globe Newspaper Co.* v. *Superior Court for Norfolk Cty.*, 457 U.S. 596, 606 (1982). But although "[e]very judicial proceeding . . . arguably benefits from public scrutiny to some degree, . . . complete openness would undermine important values that are served by keeping some proceedings [and documents] closed to the public." *Times Mirror Co.*, 873 F.2d at 1213.

Moreover, Congress expressly accounted for the public interest in monitoring the government's use of its wiretapping authority by providing for annual reports to Congress in 18 U.S.C. § 2519. That section requires that the Attorney General (and principal prosecuting attorney for each state) file a report to the Administrative Office of the U.S. Courts regarding all Wiretap Act orders granted or denied each year. 18 U.S.C. § 2519(2). The Administrative Office, in turn, must prepare a comprehensive Wiretap Report that is submitted to Congress and made public each June. 18 U.S.C. § 2519(3). Section 2519 also requires each judge who has issued or denied a wiretap order to report information about that order to the Administrative Office. The Wiretap Report, available at http://www.uscourts.gov/statistics-reports/analysis-reports/wiretap-reports, contains detailed information about the types of wiretap orders, offenses for which they were obtained, length of the orders, cost of interceptions, and results, including arrests and convictions. The Wiretap Report does not contain any personal information about target subjects or other information that would undermine the sealed nature of wiretap orders. Any claimed public interest in wiretap applications and orders by The Stranger, in light of the strong statutory presumption against

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 40

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

public disclosure of such applications and orders, is met through the statutorily-required Wiretap Report.  In addition, defendants can and do seek suppression of information obtained from wiretaps in particular cases by challenging whether the application met the applicable statutory standards.  *See, e.g.*, *United States* v. *Barragan*, 871 F.3d 689, 699-701 (9th Cir. 2017); *United States* v. *Rodriguez*, 851 F.3d 931 (9th Cir. 2017); *United States* v. *Garcia-Villalba*, 585 F.3d 1223 (9th Cir. 2009).

The First Amendment does not demand more openness, particularly where, as here, the tradition and history of nondisclosure itself has a constitutional foundation.  *In re New York Times Co.*, 577 F.3d at 406-07 (noting that too lax an interpretation of the limits on disclosure and use of Title III materials might raise constitutional doubts about the statute, since it was enacted in the wake of *Katz* v. *United States*, 389 U.S. 347 (1967), which had banned the use of evidence obtained by wiretapping unless done on a limited basis by government agents with prior court authorization); *Nat'l Broadcasting Co.*, 735 F.2d at 53 (same).  In light of these considerations and the "heavy presumption of constitutionality to which a 'carefully considered decision of a coequal and representative branch of our Government'" is entitled, this Court should dismiss all of The Stranger's claims for Wiretap Act materials.  *U.S. Dep't of Labor* v. *Triplett*, 494 U.S. 715, 721 (1990).

## B.   There Is No Common Law Right of Access to Wiretap Act Materials

The common law right of access to public documents does not apply to its claims concerning Wiretap Act orders.  While courts have long recognized a common law "right to inspect and copy public records and documents, including judicial records and documents," the right is not absolute.  *Nixon*, 435 U.S. at 597-98.  The right does not apply to documents that "have traditionally been kept secret for important policy reasons."  *Times Mirror Co.*, 873 F.2d at 1219.  Thus, for example, courts have held that the common law right of access does not apply to records that would disclose matters occurring before a grand jury.  *Id.*; accord *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998); *United States* v. *Smith*, 123 F.3d 140, 156 (3d Cir. 1997).  Applying that limitation here, the common law right of access does not, on its own terms, apply to wiretap applications and orders.  As with grand jury materials,

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 41

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

they have traditionally been kept secret for important policy reasons. *In re N.Y. Times Co.,* 577 F.3d at 409-10 (wiretap applications not historically open to public); *Kansas City Star*, 666 F.2d at 1175 (noting that Section 2518(8)(b)'s sealing requirement was intended to protect privacy, the confidentiality of the Government's investigation, and the authenticity of the application and order).

Even if the common law right of access did apply, however, it would give way to Title III's comprehensive scheme governing disclosure and use of wiretap materials. *Gelbard* v. *United States*, 408 U.S. 41, 46 (1972). Where the question is whether federal statutory or federal common law governs, courts must "start with the assumption that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *City of Milwaukee* v. *Illinois*, 451 U.S. 304, 317 (1981). When "Congress has addressed the problem," the separation of powers prohibits a court from "continu[ing] to rely on federal common law." *City of Milwaukee*, 451 U.S. at 315. For that reason, the Second Circuit, after assuming "that wiretap applications are (a) judicial records and (b) included in th[e] qualified common law right of access," held that Title III "supersedes any arguable common law right" to Wiretap Act materials. *In re New York Times Co.*, 577 F.3d at 405.

There is no question that Congress has addressed the problem of access to wiretap applications and orders. Section 2518(8)(b) expressly addresses the question of when wiretap applications and orders may be disclosed and leaves no room for a court to substitute its own judicially crafted standard. *Kansas City Star*, 666 F.2d at 1176-77 (holding that the common law right of access does not apply to wiretap applications and orders because "Title III does not allow these documents to become 'public' until there is a factual determination of good cause for their disclosure"); *cf., e.g., In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 491 (Foreign Intel. Surv. Ct. 2007) (holding that the Foreign Intelligence Surveillance Act, which creates "a comprehensive statutory scheme designed to protect [Foreign Intelligence Surveillance Court] records from routine public disclosure . . ., 'occup[ies] this field and would supersede the common law right of access even if one existed.'") (quoting *United States* v. *Gonzalez*, 150 F.3d 1246, 1263 (10th Cir. 1998)); *In re Motions of Dow Jones & Co.*, 142 F.3d at

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 42

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

504 (holding that the common law right of access does not apply to judicial documents relating to grand jury proceedings because, among other things, the Federal Rules of Criminal Procedure 6(e)(5) and 6(e)(6) "supplanted" any common law right of access that might have existed).

### C.    There Is No Right of Access to Dockets for Wiretap Materials

These principles apply not just to the orders and associated materials that The Stranger seeks, but also to the dockets for wiretap matters.  Because disclosing the dockets would disclose the existence of a wiretap as to a particular individual or facility, consistent with the statute, a Court cannot order disclosure without first making a finding of good cause relevant to the particular case at issue.  Such a disclosure would necessarily implicate the privacy interests that Congress sought to safeguard.  For that reason, The Stranger's broad demand for seven years of docket sheets reflecting wiretap materials, and its demand that this Court change its docketing procedures prospectively so that dockets for Wiretap Act orders are publically available, run directly counter to the Wiretap Act's requirements and should be denied for lack of merit.

### V.    The Stranger's Claims for Access to Materials Under the Pen Register Act, the Stored Communications Act, and the All Writs Act Lack Merit

In *Matter of Leopold*, the court concluded that the petitioners failed to establish a First Amendment right to access PR/TT orders, 2703(d) orders, and SCA warrants because the "prerequisite of showing a longstanding tradition of public access simply does not exist as to the PR/TT and SCA materials at issue." *Id.*  It concluded that the petitioners did have a common law right to access the materials, but that giving petitioners everything they sought would be so burdensome that the burden outweighed the interest in disclosure except to the limited extent that changes that the court had already made to its docketing system would make it possible to make prospective, periodic reports about the use of these processes available to the public. *Id.* at *19-31.  This court should follow suit, except insofar as the lack of parallel refinements to its docketing system means that this Court should conclude that the

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 43

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

burden imposed by The Stranger's demand for prospective docketing information outweighs any common law right to access dockets.

## A.  The Stranger Has No First Amendment Right to the Materials in Question

Like the petitioners in *Matter of Leopold*, The Stranger fails to establish a First Amendment right to access the materials that it seeks: the dockets, applications, orders, and other materials for PR/TT orders, 2703(d) orders for subscriber records from electronic communications providers, SCA warrants for the contents of wire or electronic communications in electronic storage, the contents of wire or electronic communications in a remote computing service, and All Writs Act orders in aid of another investigatory process. The Stranger cannot show that either experience or logic supports access to these materials.

### 1.  There Is No History of Access to These Materials

The Stranger concedes (Pet. 22) that there is no historical tradition of access to Stored Communications Act materials.  In fact, there is no historical right of access to *any* of these materials.

The Ninth Circuit has held that the First Amendment right to access court records does not extend to documents that "'traditionally have been kept secret for important policy reasons.'"  *Times Mirror Co.*, 873 F.2d at 1219.  Pre-indictment investigative proceedings have traditionally been closed to the public.  *Press-Enterprise II*, 478 U.S. at 10 ("Grand jury proceedings have traditionally been closed to the public and the accused."); *Douglas Oil Co.*, 441 U.S. at 218 n.9 (noting that investigative proceedings have been kept secret since at least the 17th  century); *Times Mirror Co.*, 873 F.2d at 1213 ("the experience of history implies a judgment that warrant proceedings and materials should not be accessible to the public, at least while a pre-indictment investigation is still ongoing as in these cases"); *In re Motion of Dow Jones & Co.*, 142 F.3d at 504 ("Although some have identified a common law tradition of public access to criminal trials, this never extended to preindictment, pretrial proceedings involving a grand jury.").

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 44

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   The tradition of secrecy has caused courts to conclude that there is no right to access

2   orders and other materials associated with PR/TT orders, 2703(d) orders, and SCA warrants.

3   In *Matter of Leopold*, the court concluded that there was no tradition of access to any of these

4   materials. It explained that "historical practice, as well as the [Pen Register Act] and the [Stored

5   Communications Act]'s text and statutory context, show that no such tradition of openness

6   exists with respect to the sealed materials the petitioners seek to unseal and disclose."

7   2018 WL 1129660 at *14; *see also Applebaum*, 707 F.3d at 291 n.9 (observing that there is no

8   history of access to § 2703(d) matters because "§ 2703(d) orders are most analogous to sealed

9   or unexecuted search warrants and grand jury proceedings for which traditionally, there has

10  been no right of access."). The lack of a tradition of openness is apparent for all of the

11  processes at issue here.

### a.    PR/TT Orders

13  The Pen Register Statute requires the Court to place all orders authorizing the

14  installation of PR/TTs under seal, at least until "otherwise ordered by the court." 18 U.S.C. §

15  3123(d)(1). The Act also imposes default nondisclosure obligations on third parties who own

16  or lease facilities to which PR/TT devices are attached or who are obligated to assist the

17  government in installing such devices. *Id.* §§ 2518(8)(b), 3123(d)(2). These provisions mean

18  that, to the extent there is an "unbroken, uncontradicted history" with respect to PR/TT

19  matters, it is a history of sealing, not a history of openness.

### b.    2703(d) Orders and SCA Warrants

21  The Stored Communications Act specifically authorizes the United States to obtain an

22  order prohibiting the service provider from notifying anyone of the existence of a 2703(d)

23  order. 18 U.S.C. § 2705(b). Implicit in that provision is the understanding that the application

24  and order are not publicly available and the existence of the order will not be disclosed by the

25  court's docketing system. The Stored Communications Act is "nestled between the [Pen

26  Register Act] and the wiretap statute within a statutory framework that broadly prioritizes law

27  enforcement's need for secrecy over the public's interest in transparency." *Matter of Leopold*,

28  2018 WL 1129660 at *15. In practice, "the government has 'always been able to restrict access'

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 45

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to SCA warrants and § 2703(d) orders 'by requesting a sealing order, regardless of the statutory default,'" and to delay or preclude notification to a subscriber or customer of an SCA warrant or § 2703(d) order's existence. *Id.* (quoting *Applebaum*, 707 F.3d at 291 n.9 (quoting in turn *Times Mirror Co.*, 873 F.2d at 1214)).[24]  There is no tradition of openness for 2703(d) orders or SCA warrants.[25]

### c.    All Writs Act Orders

The Stranger implicitly concedes (Pet. 26) that its claim to All Writs Act orders is derivative of its claims for these other types of processes; it argues that it is entitled to them only because "there is a right of access to those underlying documents," that is, the orders in aid of which they were issued.  It makes no independent argument that All Writs Act orders have historically been open to the public.

### 2.    Logic Does Not Support Public Access to These Materials

The logic requirement asks whether public access plays a significant positive role in the process in question.  *Times Mirror Co.*, 873 F.2d at 1214-15 (citing *Press-Enterprise II*, 478 U.S. at 8-10).  The *Applebaum* court held that the logic requirement was not met for 2703(d) orders, 707 F.3d at 292, and that conclusion applies equally to PR/TT orders and SCA orders, too.

Public access does not play a significant role for any of these processes.  These processes are investigative, and "openness of the orders does not play a significant role in the

---

[24] A preclusion order remains in effect "for such period as the Court deems appropriate." 18 U.S.C. § 2705(b).  As noted above, in the interest of greater transparency, on October 19, 2017, the Department of Justice adopted a policy that sets a default limit of one year for nondisclosure orders unless exceptional circumstances apply.  This includes preclusion orders for grand jury subpoenas where the only information sought is subscriber information.

[25] As explained above, the United States Attorney's Office in this district has adopted a practice of moving to unseal applications and warrants, including SCA warrants, after 16 months if the investigation is closed and no compelling reason for sealing remains.  When a motion to unseal is granted, the clerk unseals the docket as well as the order and underlying materials.  The Office moves to unseal SCA warrants in these circumstances in the interests of transparency, where it can determine that there is no continued need for sealing.  But as the *Matter of Leopold* court explained, these warrants are more similar to subpoenas than to search warrants, and tradition (and logic) support maintaining them under seal even after an investigation has closed, 2018 WL 1129660 at *17, even though the United States Attorney's Office in this district moves to unseal them in some circumstances.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 46

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

functioning of investigations." *Applebaum*, 707 F.3d at 292.  The processes are ex parte, and proceedings are limited to the issuance of an investigative order.  They occur at the investigative, pre-grand jury, pre-indictment phase of what may or may not mature into an indictment.  Like the grand jury system, pre-indictment investigative processes where privacy and secrecy are the norm would be "frustrated if conducted openly."  *Times Mirror Co.*, 873 F.2d at 1215 (quotation omitted).

Logic does not support the wholesale unsealing of these processes even when an investigation has ended.  When an investigation ends with charges, the public is informed of the charges through a public indictment, and the defendant is entitled to receive copies of any applications and orders for these types of processes in criminal discovery.  The indictment presents an opportunity for interested parties to seek unsealing in particular cases, where the Court can assess the need for secrecy in light of the particular facts of the case.  The additional practice of unsealing applications and orders wholesale would require—in many cases—redaction of law enforcement sensitive information to protect the integrity of ongoing investigations; to protect the privacy interests of uncharged individuals falling within the scope of an investigation; and to protect information under Fed. R. Crim. P. 6(e).  In all cases, personally identifiable information would need to be redacted in accordance with Fed. R. Crim. P. 49.1.  The facts that remained after redaction in any PR/TT, Stored Communications Act, or All Writs Act application would likely be redundant of facts disclosed through charging documents and pleading documents.  For these reasons, unsealing redacted applications and orders would often fail to supply any useful information to the public but would nevertheless be extremely burdensome.  *Matter of Leopold*, 2018 WL 1129660 at *7, 31.   The Stranger's contention (Pet. 27) that redaction is the "appropriate method" to deal with privacy concerns fails to account for these limitations.

When an investigation ends without any charges, unsealing of these materials could damage the reputation of uncharged, potentially innocent, individuals who fall within the scope of the investigation.  In *Matter of the Application of WP Co. LLC*, 201 F. Supp. 3d 109, 122 (D.D.C. 2016) ("[C]ourts have been reluctant to recognize even a qualified public right to

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 47

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

access to [post-investigation warrant materials] where, as here, an investigation concludes without indictment.")  "Indeed, without an indictment, even a 'closed' investigation is more analogous to a federal grand jury proceeding, to which no public right of access attaches . . . ."  *Id.*  Further, "as a general matter, the Due Process Clause of the Fifth Amendment protects an individual from governmental accusations of criminal misconduct without providing a proper forum for vindication."  *Id.*; see also USAM § 9-27.760 ("As a series of cases make clear, there is ordinarily 'no legitimate governmental interest served' by the government's public allegation of wrongdoing by an uncharged party, and this is true '[r]egardless of what criminal charges may . . . b[e] contemplated by the Assistant United States Attorney against the [third-party] for the future.'") (Citing *In re Smith*, 656 F.2d 1101, 1106-07 (5th Cir. 1981)). "Courts have applied this reasoning to preclude the public identification of unindicted third-party wrongdoers in plea hearings, sentencing memoranda, and other government pleadings." *Id.* (citing cases).

Like the petitioners in *Matter of Leopold*, The Stranger analogizes the processes at issue to search warrants (Pet. 22) and argues that, like search warrants, the materials should be public once the need for secrecy has abated.  But the analogy to search warrants is inapt.  As the *Matter of Leopold* court explained, none of the investigatory techniques at issue here is like a search warrant.  *Matter of Leopold*, 2018 WL 1129660 at *16-18.

The execution of a traditional search warrant provides notice to the person whose property is searched.[26]  Once a search warrant has been executed, warrant applications and returns are routinely filed with the clerk of the court without seal.  Fed. R. Crim. P. 41(i).  This is fundamentally different from PR/TT orders, § 2703(d) orders, SCA warrants, and All Writs Act orders in aid of a valid investigatory order, all of which are executed in secret and which are typically subject to nondisclosure orders.

---

[26] There are some categories of search warrants for which this will not be true, such as a search warrant for property that already has been seized or ones for which a court finds cause to delay notice of the execution under 18 U.S.C. § 3103a.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 48

The Stranger's attempt to distinguish *Applebaum* as applying only to 2703(d) orders in open cases, and its contention that there can be no governmental interest in the continued sealing of the materials it seeks because it has limited its demand to materials from investigations for which there is no ongoing need for secrecy, elide an obvious problem: the breadth of its claim means that there is simply no practical way to determine whether any of the seven years of processes at issue relate to investigations that are open or closed. The decision in *Matter of Leopold* makes clear that the United States Attorney's Office for the District of Columbia found that it was difficult and time consuming to discern whether an investigation was open or closed and, if closed, whether there was nevertheless a compelling interest in continued sealing. *Matter of Leopold*, 2018 WL 1129660 at *7. The decision also makes clear that the government's effort to "extract" information from a representative subset of matters from each year was time consuming and unsatisfactory to the petitioners. *Id.* at *27.

Both the clerk of the Court and the United States Attorney's office would face similar difficulties here if ordered to provide access to applications and orders in all closed investigations initiated since 2011. Like the United States Attorney's Office for the District of Columbia, *Matter of Leopold*, 2018 WL 1129660 at *2, the United States Attorney's Office does not maintain lists of docket numbers for PR/TT matters or SCA matters initiated by prosecutors, and its internal tracking system for criminal investigations does not correspond to the docket numbers assigned by the Clerk's Office. Gorman Decl. ¶ 14. Also, as in *Matter of Leopold*, *id.* at *24-25, the court's docketing system does not contain consistent information about applications and orders for the processes at issue here. McCool Decl. ¶¶ 15-16. For these reasons, the supposed limitation of The Stranger's demand for unsealing to closed investigations is, in practice, no limitation at all.

The Stranger does not cite a single case holding that the right of access to court records requires the Court and the United States to engage in a labor-intensive, multi-step process to determine whether seven years of sealed processes relate to closed or open criminal investigations or to provide lists of such processes. But the *Matter of Leopold* decision makes

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 49

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

clear that providing the backward-looking relief that The Stranger seeks would be exceedingly onerous.  *Matter of Leopold*, 2018 WL 1129660 at *1-10.

As the *Matter of Leopold* court observed, that burden would necessarily detract from the Court and the United States' "mission-critical responsibilities."  *Id.* at *27.  Moreover, imposing a presumption in favor of unsealing after a certain amount of time has passed would increase the possibility of prematurely disclosing investigations or violating the privacy or due process interests of uncharged individuals and unduly cabin judicial discretion to seal particular matters.

The Stranger's claim that logic favors openness here is in any event unconvincing.  In *Times Mirror Co.*, the Ninth Circuit considered and rejected the argument that "any time self-governance or the integrity of the criminal fact-finding process may be served by opening a judicial proceeding and its documents, the First Amendment mandates opening them to the public."  873 F.2d at 1213.  The court explained that accepting that argument would mean that few, if any, judicial proceedings would remain closed because every "judicial proceeding, indeed every governmental process, arguably benefits from public scrutiny to some degree, in that openness leads to a better-informed citizenry and tends to deter government officials from abusing the powers of government."  *Id.*  But it rejected complete openness, explaining that it "would undermine important values that are served by keeping some proceedings closed to the public.  Openness may, for example, frustrate criminal investigations and thereby jeopardize the integrity of the search for truth that is so critical to the fair administration of justice."  *Id.*  "[C]laims of 'improved self-governance' and 'the promotion of fairness' cannot be used as an incantation to open these proceedings to the public. Nor will the mere recitation of these interests open a particular proceeding merely because it is in some way integral to our criminal justice system."  *Id.*

Additionally, although The Stranger contends that logic dictates openness even in contravention of historical practice, and the Ninth Circuit has suggested that logic alone can in some circumstances justify opening a proceeding to the public, the strong tradition of secrecy for the types of processes at issue here compels the conclusion that there is no First

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 50

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Amendment right to the materials.  As the Supreme Court has observed, "considerations of experience and logic are, of course, related, for history and experience shape the functioning of governmental processes."  *Press-Enterprise II*, 478 U.S. at 9.  The processes at issue here have been shaped in a tradition of secrecy *because* logic dictates that openness would undermine their usefulness.

### 3.     The Interest in Secrecy Outweighs Any First Amendment Right

Finally, even if there were a First Amendment right of access here, that right would not be absolute.  *Times Mirror Co.*, 873 F.2d at 1213.  The presumption of access can be overcome if closure serves a compelling interest and is narrowly tailored to serve that interest.  *Id.* at 1211 n.1 (quoting *Press-Enterprise I*, 464 U.S. at 509-10).  The Stranger argues that no governmental interest can overcome their qualified right of access based on these factors.  But once again, the breadth of its claims make it impossible to assess which compelling governmental interests may be at stake (e.g., in protecting sensitive investigative techniques, ongoing investigations, or the identity of cooperators).  The sheer volume of materials sought should cause this Court to conclude that, even if there were a First Amendment right to some or all of the materials, that qualified right would be overcome by the compelling interest of preserving governmental and judicial resources.  *Matter of Leopold*, 2018 WL 1129660 at *23-27.

That is particularly true because The Stranger's asserted interest in allowing the public to learn how the Court interprets and applies its statutory authority to issue these processes is already safeguarded by litigation brought by service providers and criminal defendants.  *See, e.g., In re Nat'l Security Letter*, 863 F.3d at 1110; *Carpenter*, 819 F.3d at 880, *cert. granted* 137 S. Ct. 2211; *Forrester*, 512 F.3d at 509; *Corbitt*, 588 F.App'x at 594; *Applebaum*, 707 F.3d at 286-87; *Microsoft Corp.*, 233 F. Supp. 3d at 887.  Challenges to nondisclosure orders and the use of these processes already provide the public with information about the Court's interpretation of the statutory authority at issue.

### B.     There Is No Common Law Right of Access to These Materials

The common law right of access to public documents does not apply to these materials, either.  While courts have long recognized "a general right to inspect and copy public records

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 51

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and documents, including judicial records and documents," the common law right is not absolute. *Nixon*, 435 U.S. at 597-98. It does not apply to documents that "have traditionally been kept secret for important policy reasons." *Times Mirror Co.*, 873 F.2d at 1219. Applying that limitation here, the common law right of access does not apply to these materials. As with grand jury materials and Wiretap Act materials, they have traditionally been kept secret for important policy reasons. Also, as the concurring judge in *Applebaum* explained, when a statutory scheme is enacted in order to protect the privacy interests of individuals subject to government process, the common law right of access is "squarely at odds with the Act's essential purpose." *Applebaum*, 707 F.3d at 297 (Wilson, DJ, concurring).

Even if the common law right of access did apply on its own terms, it would give way at least with respect to the Pen Register Act's "comprehensive scheme" governing disclosure and use of Pen Register Act materials. The Pen Register Statute expressly requires sealing "until otherwise ordered by the court." 18 U.S.C. § 3123(d)(1). In so providing, Congress has addressed the problem of access, and cut off any common law right to access these materials. *City of Milwaukee*, 451 U.S. at 315; *In re New York Times Co.*, 577 F.3d at 405.

Finally, rights of access grounded in the common law can be overridden by the same showing of a compelling governmental interest that overrides a First Amendment right of access. *CBS, Inc.*, 765 F.2d at 825. The *Matter of Leopold* court, applying the D.C. Circuit's test for whether a compelling government interest outweighed the common law right to access the materials at issue, concluded that the government interest largely outweighed the common law right.[27] *Matter of Leopold*, 2018 WL 1129660 at *23-31. Likewise in *Applebaum*, the Fourth

---

[27] The D.C. Circuit has set out a multi-factored test for determining whether a compelling interest outweighs the common law right of access. *Matter of Leopold*, 2018 WL 1129660 at *23-31. The Ninth Circuit has not adopted that test; it has concluded that a court should balance "the competing interests" of the public and the party who seeks to keep judicial records secret. *Custer Battlefield*, 658 F.3d at 1195 (quoting *Foltz* v. *State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). In this context, those interests include the burden on prosecutorial and judicial resources. *Matter of Leopold*, 2018 WL 1129660 at *19 ("The significant burdens on the USAO and Clerk's Office that would attend recognizing a common law right of access to previously initiated PR/TT and SCA matters, however, properly are cognizable as particularized interests that weigh heavily against further retrospective relief than has already been provided."); *id.* at *26.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 52

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Circuit concluded that there was a common law right of access to 2703(d) matters even for open investigations, but found that the government's interests in "maintaining the secrecy of its investigation, preventing potential subjects from being tipped off, or altering behavior to thwart the Government's ongoing investigation" outweighed the public's common law right of access. 707 F.3d at 293-94. This Court should reach that same conclusion.

Although the *Matter of Leopold* Court concluded that the petitioner's right to access the PR/TT and SCA processes at issue there was not overridden by a compelling government interest in one limited respect, that component of its reasoning does not apply here. *Matter of Leopold*, 2018 WL 1129660 at *28-31. It held that recent changes that it had already made to its docketing system would make it possible to provide periodic reports to the public about the use of PR/TT and SCA orders in the future without unduly burdening either the court or the United States Attorney's Office. *Id.* That is not true here. The Clerk's Office and the United States Attorney's Office have not undertaken changes to their tracking systems such that the Clerk could release periodic reports without taking on a burden that outweighs any common law interest in aggregate docket information. Whether it should do so in the interest of greater transparency is a question that can and should be addressed independent of this litigation.

What is clear is that an order granting The Stranger's request for prospective docketing information could not be implemented without significant coordination between the clerk and the United States Attorney's Office which has not been undertaken. When a court "exercises its equitable discretion to weigh the considerations of injunctive relief," the exercise "undoubtedly 'can fully protect the range of public interests at issue'" in the proceedings. *Ctr. for Biological Diversity* v. *Mattis*, 868 F.3d 803, 829 (9th Cir. 2017) (quoting *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 320 (1982)). Here, the relevant public interests include the interest in preserving judicial and prosecutorial resources, especially in light of the limited value that redacted materials would provide, and the fact that service providers and criminal defendants regularly litigate the lawfulness of the processes at issue.

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 53

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### C.     There Is No Separate Right to Access Dockets Under the First Amendment or the Common Law

The conclusion that there is no right of access to these materials applies to the claims for the docket sheets for these all applications and orders just as it does to materials themselves.  In *Matter of Leopold*, by the time that the court ruled on the First Amendment and common law rights at issue, the petitioners' claims were mostly limited to access to dockets claims.  They sought limited docket information for all 2703(d) matters from 2008 to the present, limited docket information for PR/TT orders, 2703(d) orders, and SCA warrants prospectively, and the periodic unsealing of dockets for these matters.  The court largely rejected these claims.  2018 WL 1129660 at *14-30.

The Stranger's petition argues (Pet. 16) that dockets are court records and that it has a right to access them under the First Amendment and the common law.  But the processes at issue do not initiate criminal cases that the public has a right to attend, they are ex parte.  Because The Stranger cites no authority for the proposition that ex parte orders authorizing the use of these processes must be docketed, and the contention that the dockets for these types of processes are court records is unpersuasive.  Also, to the extent that the purpose of dockets is alerting the public to court proceedings so that it may attend those proceedings, that purpose does not suggest that these processes must be docketed.

The authorities that The Stranger cites (Pet. 16-17) stand only for the proposition that the dockets for judicial proceedings that are themselves required to be open must also be open. *Doe* v. *Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (First Amendment right of access applies to summary judgment proceedings and associated documents); *United States* v. *Mendoza*, 698 F.3d 1303, 1304 (10th Cir. 2012) (criminal judgment must be entered on public docket); *United States* v. *Ochoa-Vasquez*, 428 F.3d 1015, 1029-31 (11th Cir. 2005) (dicta advising courts within the Eleventh Circuit that the right to access court records applies to docket sheets concerning "criminal proceedings"); *Media Gen. Operations, Inc.* v. *Buchanan*, 417 F.3d 424, 437 (4th Cir. 2005) (requiring public docketing of post-return search warrant); *Hartford Courant Co.*, 380 F.3d at 98 (disapproving state court practice of sealing dockets for cases concerning prominent

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 54

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    individuals, holding that "the right to inspect documents derives from the public nature of

2    particular tribunals");  *United States* v. *Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (requiring

3    public docketing of post-indictment criminal proceedings).

4         That the dockets must be public for matters that must themselves be public sheds no

5    light on whether dockets must be public for matters that may be sealed.  The test for whether

6    a particular document is subject to a right of access is whether that document relates to a

7    *proceeding* where the right applies.  *Applebaum,* 707 F.3d at 295.  As the *Applebaum* court

8    explained, dockets exist to "'provide a map of proceedings in the underlying case,' ensuring

9    'meaningful access'" to it. 707 F.3d at 295 (quoting *Hartford Courant Co.*, 380 F.3d at 95).  That

10   purpose does not suggest that docket sheets must be publicly available for proceedings that

11   are themselves not public.  *Id.*

12        Instead, a docket sheet for a matter may be sealed if the matter itself may be sealed.

13   *Id.*, *see also United States* v. *Index Newspapers LLC*, 766 F.3d 1072, 1091-92 (9th Cir. 2014)

14   (holding that docket sheet for contempt proceeding ancillary to grand jury proceeding should

15   be public because the contempt proceedings themselves were required to be open but making

16   no suggestion that any docket pertaining to the underlying grand jury matter should be

17   unsealed); *In re Sealed Case*, 199 F.3d at 525 (observing that there "is no constitutional, statutory,

18   or common law right requiring" a "generic rule requiring public docketing of all grand jury

19   matters," rejecting claim for mandatory public docketing of grand jury ancillary proceedings).

20        In any event, the Stranger also makes no attempt to show that the right to access court

21   records is a right to access and search an electronic database of those records, as opposed to

22   the more traditional right to inspect and copy particular court papers.  The petition assumes a

23   world in which a party may review dockets electronically, even though access issues have

24   historically been litigated in the context of claims for actual records in specific cases.

25        The Stranger's suggestion (Pet. 18) that there is no compelling reason for not providing

26   what it terms "basic categories of information" about investigatory processes from the docket

27   is incorrect.  Among the categories of information that it seeks are the "law enforcement

28   agency filing the application" and the "recipient of the order."  Prospectively, it seeks (Pet. 30)

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 55

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   this information as well as "information about the type of crime under investigation" on a

2   realtime basis.  But the fact that the United States is seeking process from a small service

3   provider, or the fact that a specialized agency (such as the Federal Aviation Administration) is

4   seeking process, may well be a sufficient basis for a target to discern that he, she, or it is under

5   investigation.  This would also be true for certain crimes if the docket revealed the crime or

6   crimes under investigation.

7        The Stranger's contention that this Court should change its docketing practices to

8   ensure that dockets for these matters contain certain information that it wants, and that the

9   Court should require the United States Attorney's Office to file information sheets whenever

10  it seeks one of these processes, misconceives the right to access court records.  The right to

11  access court records does not give a litigant the right to direct what records a court maintains.

12       The Stranger's contention that the dockets should be made public also misses another

13  fundamental problem, at least insofar as it seeks retroactive relief:  the Clerk's Office does not

14  currently maintain its filing system in a form that would make it possible for it to unseal

15  dockets for all of the relevant types of processes without first reviewing and editing already-

16  existing docketing entries so that each docket sheet clearly identified the type of process at

17  issue.  Additionally, determining whether there is a continuing need for secrecy for matters

18  that have already been initiated would be no simple matter.  The United States Attorney's

19  Office's cannot attach a GJ number to an application before it has filed, and, like the United

20  States Attorney's Office for the District of Columbia, *Matter of Leopold*, 2018 WL 1129660 at

21  *2, it has historically had no reason to track applications and orders for these types of processes

22  by GJ number.  For that reason, a backward-looking effort to determine which docket sheet

23  can be made public would require the Clerk to provide a copy to the United States Attorney's

24  Office of every application and order on its GJ docket since 2011, and then require the United

25  States Attorney's Office to try to determine to which investigation these materials pertained—

26  a process that can be extraordinarily difficult when the relevant attorneys have left the office.

27       Imposing that burden on the Clerk and the U.S. Attorney's office is unwarranted.  No

28  precedent suggests that a petitioner can demand that a court change already-existing records

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 56

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to make them machine searchable, and the administrative burden of doing so outweighs any interest that The Stranger has in the dockets. *Matter of Leopold*, 2018 WL 1129660 at *30-31. That right to court records is not a right to demand that the court reorganize and edits its electronic filing system for existing cases and direct an institutional litigant to reorganize and edit its case tracking system, too.

**D.     The Claim for a Presumption of Unsealing After 180 Days Is Without Merit**

The Stranger's demand that this Court should order the judges of this district that any sealing order that they enter for one of the processes at issue should be unsealed after 180 days unless the government can show a continued need for unsealing is without merit. The demand is effectively a demand for a burden-shifting rule that kicks in 180 days after a pre-indictment investigatory measure is authorized. The Stranger has cited no authority suggesting that the public or the press have a First Amendment or common law right to shift a petitioner's burden to establish a right to a particular court record to the government and to force the government to prove a continued need to seal a document that has been lawfully sealed after 180 days have passed. The *Matter of Leopold* court rejected the argument that the petitioners had a right to presumptive unsealing. 2018 WL 1129660 at *31

The 180-day period The Stranger seeks appears to be wholly arbitrary. It is not tied to the relevant First Amendment and common law tests. It reflects no particularized consideration of the types of proceedings at issue or the typical duration of an investigation using one of these processes. Additionally, it reflects no consideration of the relevant statutory standards for sealing, where those are applicable. This too should be rejected.

**CONCLUSION**

This Court should dismiss or deny the petition as set forth in greater detail herein. The petition should be:

(1) dismissed for lack of jurisdiction because it seeks structural changes to this Court's docketing and sealing practices that are not available as a right to a litigant invoking a court's power to supervise its records in specific cases; or

(2) dismissed for lack of standing; or

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 57

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(3) denied for lack of merit insofar as it make any claims with respect to wiretap orders and materials; and

(4) denied for lack of merit insofar as it seeks access to dockets, applications, and orders for PR/TT orders, 2703(d) orders, SCA warrants, and All Writs Act orders.

To the extent the Court decides it would be beneficial to adopt some prospective changes to its docketing practices outside the context of this litigation, the United States Attorney's Office would welcome the opportunity to participate in the process of considering those changes given the impact they could have on the mission of the office. The docketing practices of this Court and case-tracking practices of the United States Attorney's Office developed organically as various authorities were defined by statute. As a result, there has not been an opportunity to consider how to best ensure appropriate transparency while taking into account the administrative, privacy, public safety, and other issues implicated by docketing practices.

As noted, the *Matter of Leopold* court granted limited relief to the petitioners there, concluding that they had a common law right to some basic prospective docketing information, and that changes which the court had already implemented meant that providing that information to the petitioners would not be so burdensome as to outweigh their interest in it. The changes that the *Matter of Leopold* court decided to implement required changes to the local rules, as well as the adoption of a Memorandum of Understanding between the clerk of the court and the United States Attorney's office regarding filing and docketing practices. 2018 WL 1129660 at *28.

At least one other district has recently also revised its docketing practices to allow the public access to lists of case numbers for PR/TT orders, 2703(d) orders, and SCA warrants. The United States District Court for the Eastern District of Virginia has begun maintaining what it calls an electronic communications docket and "a 'running list' that is publicly available from the district court's clerk's office" but not available through CM/ECF. *Applebaum,* 707 F.3d at 288. The electronic communications docket "indicates all assigned case numbers, the date of assignment, the presiding judge, and whether the case is sealed" for PR/TT and SCA

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 58

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

applications under 18 U.S.C. § 2703(d), but "lacks individual docket entries for all types of documents filed in each case and the dates of such entries." *Id.* As in the District for the District of Columbia, creating the running list in the Eastern District of Virginia required a shift both in the docketing practices of the clerk's office and in the manner in which applications were presented to the Court and tracked by the United States Attorney's Office. *Id.*

If this Court concludes, as an exercise of its administrative authority, that it would be beneficial to consider implementing new practices in this district to make limited docketing information available about PR/TT orders, 2703(d) orders, SCA warrants, or All Writs Act orders, the United States Attorney's Office respectfully requests that, as in the above-references courts, it do so in coordination with the United States Attorney's Office, not by decree. The United States Attorney's Office stands ready to work with the Court if it so desires. The instant litigation is not the way to accomplish that change.

Dated this 13th day of March, 2018.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*/s/  Helen J. Brunner*
HELEN J. BRUNNER
First Assistant United States Attorney

*/s/  Teal Luthy Miller*
TEAL LUTHY MILLER
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:     (206) 553-2465
Fax:               (206) 553-0755
E-mail:          Teal.Miller@usdoj.gov

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 59

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the Defendant.

Dated:  March 13, 2018.


_s/ Elisa G. Skinner_
ELISA G. SKINNER
Paralegal Specialist

RESPONSE TO PETITION TO UNSEAL
DOCKETS, APPLICATIONS AND ORDERS/*Index Newspapers* - 60